# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STANT PARENT CORP., *et al.*,[1] | Case No. 09-_____ ( ) |
| Debtors. | (Joint Administration Pending) |

## ORDER (A) APPROVING BID PROCEDURES
## RELATING TO SALE OF THE DEBTORS' ASSETS;
## (B) SCHEDULING A HEARING TO CONSIDER THE SALE;
## (C) APPROVING THE FORM AND MANNER OF NOTICE OF SALE
## BY AUCTION; (D) ESTABLISHING PROCEDURES FOR NOTICING AND
## DETERMINING CURE AMOUNTS; AND (E) GRANTING RELATED RELIEF

This matter came to be heard by this Court on the Motion[2] of the above-captioned debtors and debtors-in-possession (collectively, the **"Debtors"**), requesting entry of (i) an order (a) approving the bid procedures attached hereto as <u>Exhibit 1</u> (the **"Bid Procedures"**) with respect to the proposed sale of the Debtors' assets (the **"Acquired Assets"**), as more fully set forth in that certain asset purchase agreement (the **"Agreement"**) by and between the Debtors and Vapor Acquisition Corp. (the **"Stalking Horse Purchaser"**), (b) establishing the date, time and place for a sale hearing (the **"Sale Hearing"**), (c) approving the form and manner of notice of the sale by auction (the **"Sale Notice"**), (d) establishing procedures for noticing and determining cure amounts (the **"Cure Notice"**), (e) approving the Expense Reimbursement and (f) granting related relief; and (ii) an order (1) approving the sale free and clear of all liens,

---

[1] The Debtors are the following entities: Stant Parent Corp. (7606), Stant Holding Corp. (2025), Stant Corporation (8429), Stant Manufacturing, Inc. (4059), Standard-Thomson Corporation (5751) and Thomson International Corporation (5448).

[2] Unless otherwise stated, all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the Agreement attached thereto as <u>Exhibit B,</u> and to the extent of any inconsistency, the Agreement shall govern.

claims, encumbrances and interests (the **"Transaction"** or the **"Sale"**), (2) authorizing the assumption, sale and assignment of certain executory contracts and unexpired leases and (3) granting related relief; and it appearing that notice of the Motion is appropriate under the circumstances and that no other or further notice need be given; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**[3]

A.       This court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0). Venue is proper in this district and in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       The statutory predicates for the relief requested herein are sections 105(a), 363(b) and (f), 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the **"Bankruptcy Code"**) and Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**).

C.       Notice of the Motion having been given to the Notice Parties (as defined below) is sufficient in light of the circumstances and the nature of the relief requested herein.

D.       The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including, without limitation: (i)

---

[3]       The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

approving the Bid Procedures; (ii) scheduling a Sale Hearing; (iii) approving the Sale Notice; and (iv) approving the Cure Notice.

E.    The Bid Procedures were negotiated in good faith by the Debtors and the Stalking Horse Purchaser and are reasonable and appropriate.

F.    The Expense Reimbursement (as defined in the Agreement) is the product of extensive negotiations between the Debtors and the Stalking Horse Purchaser. Accordingly, payment of the Expense Reimbursement under the circumstances described in the Agreement are: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Purchaser; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Purchaser; and (iv) necessary to induce the Stalking Horse Purchaser to continue to pursue the sale transaction and to continue to be bound by the Agreement.

G.    The Expense Reimbursement also induced the Stalking Horse Purchaser to submit a bid that will serve as a minimum floor bid on which the Debtors, their creditors and other bidders may rely. The Stalking Horse Purchaser has provided a material benefit to the Debtors and their creditors by increasing the likelihood that Debtors will receive the best possible price for the Acquired Assets. The Expense Reimbursement will not have an adverse impact upon the Debtors, their estates, or their creditors. Accordingly, the Bid Procedures, including the Expense Reimbursement, are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

H.    The Sale Notice attached hereto as <u>Exhibit 2</u> is reasonably calculated to provide all interested parties with timely and proper notice of the Transaction, the Sale Hearing, and the Auction.

I.    The Cure Notice attached hereto as <u>Exhibit 3</u> is reasonably calculated to provide all counterparties to the Assumed and Assigned Agreements (the **"Contract Parties"**) with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any cure amounts relating thereto.

J.    The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Bid Procedures and scheduling relief requested in the Motion is granted to the extent set forth herein.

2.    The Senior Prepetition Agent is hereby deemed a Qualified Bidder and shall be entitled to credit bid all or a portion of its claims against the Debtors, without otherwise complying with the Bid Procedures, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

3.    The Debtors are hereby authorized to enter into and execute the Agreement and to perform such obligations under the Agreement which arise prior to the Sale Hearing.

4.    The Bid Procedures attached hereto as <u>Exhibit 1</u>, including the Expense Reimbursement, are hereby approved and fully incorporated into this Order, and shall apply with respect to the proposed sale of the Acquired Assets.

5.    The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

6.     The deadline for submitting a Qualified Bid (as such term is defined in the Bid Procedures) shall be _____ __, 2009 at 4:00 p.m. Eastern Time (the **"Bid Deadline"**).

7.     If the Debtors do not receive any Qualified Bids other than the Agreement, they will not hold the Auction and the Stalking Horse Purchaser will be named the Successful Bidder.

8.     To the extent at least one Qualified Bid, other than the Stalking Horse Purchaser's Bid, is timely received, the Debtors shall conduct the Auction commencing no later than 9:00 a.m. Eastern Time on _____ __, 2009 at the offices of Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166.

9.     All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Acquired Assets.

10.     The Court shall conduct the Sale Hearing commencing on _____ __, 2009 at ____ ____ .m. (Eastern Time), at which time, the Court will consider approval of the Sale to the Successful Bidder.

11.     Objections to (i) approval of the Sale, including the sale of the Acquired Assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, (ii) proposed Cure Amounts and (iii) the proposed assumption and assignment of agreements (the **"Assumed Agreements"**), including, but not limited to, objections related to adequate assurance of future performance, must be in writing and filed with this Court and served upon (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Nancy A. Mitchell, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Scott D. Cousins, Esq.), (ii) counsel to the Stalking Horse Purchaser, Landis, Rath & Cobb, LLP, 919 N. Market Street,

Suite 1800, Wilmington, Delaware 19899 (Attn: William E. Chipman, Jr., Esq.), (iii) counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: _____), (iv) counsel to any statutory committee appointed in these cases, if any, and (v) counsel to the Senior Prepetition Agent, Vedder Price P.C., 222 North LaSalle Street, Suite 2600, Chicago, IL 60601 (Attn: Michael M. Eidelman, Esq. and Stephanie K. Hor-Chen, Esq.) and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 North Market Street, P.O. Box 1709, Wilmington, DE 19899 (Attn: David B. Stratton, Esq.), so as to be received by such parties on or before _____ __, 2009 at 4:00 p.m. (Eastern Time) (the **"Objection Deadline"**); provided, however, that in the event the Auction results in a Successful Bidder other than the Stalking Horse Purchaser, the deadline for objecting to the assignment of executory contracts and unexpired leases to such Successful Bidder shall be the commencement of the Sale Hearing.

12.     Unless an objection to the assumption and assignment of an Assumed and Agreement is filed and served before the Objection Deadline or the Amended Contract Objection Deadline, as applicable, all counterparties to the Assumed Agreements shall (i) be forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed Agreements, and the Debtors and Stalking Horse Purchaser, or the Successful Bidder, as applicable, shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure Notices; (ii) be deemed to have consented to the assumption and assignment, and (iii) be forever barred and estopped from asserting or claiming against the Debtors or Stalking Horse Purchaser, or the Successful Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied

under such Assigned Agreements or that there is any objection or defense to the assumption and assignment of such Assigned Agreements.

13.     Where a nondebtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amounts (the **"Disputed Cure Amount"**), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, and subject to the consent of the Stalking Horse Purchaser, or the Successful Bidder, as applicable, of such consensual resolution, the Debtors shall promptly provide the Stalking Horse Purchaser, or the Successful Bidder, as applicable, notice and opportunity to object to such proposed resolution or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be heard at the Sale Hearing or thereafter. Pending a ruling on such objection, if not made at the Sale Hearing, the amount necessary will be reserved and paid upon a final Court order determining the correct cure amount and will be paid as provided in the Agreement. All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement will be heard at the Sale Hearing.

14.     All objections to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

15.     In accordance with the terms set forth in the Agreement, the Debtors are authorized to pay, without further order of the Court, to the Stalking Horse Purchaser, the Expense Reimbursement in an amount not to exceed $300,000.

16.     Any Expense Reimbursement that becomes payable under the Agreement shall be paid, in full, in cash, upon the closing of any Alternative Transaction. In the event the Senior Prepetition Agent's bid is selected as the Successful Bid (defined below), no Expense Reimbursement shall be payable to the Stalking Horse Purchaser.

17.     The Sale of the Acquired Assets is consistent with section 363(b)(1)(A) of the Bankruptcy Code and the Debtors' privacy policy, and no consumer privacy ombudsman is necessary in connection with the Sale.

18.     The Stalking Horse Purchaser shall have standing to object to the sale of the Acquired Assets to the Successful Bidder other than the Stalking Horse Purchaser. This Order shall not be a determination regarding the Stalking Horse Purchaser's standing regarding any other issue in connection with the Sale.

19.     The Sale Notice attached hereto as Exhibit 2 provides proper notice to all parties in interest and is approved.

20.     The Cure Notice attached hereto as Exhibit 3 provides proper notice to all parties in interest and is approved.

21.     Within three (3) business days of this order, the Debtors shall serve by first class mail, postage prepaid, copies of: (i) this order; (ii) the Motion; (iii) the Sale Notice; and (iv) the Cure Notice, upon the following entities: (a) the Office of the United States Trustee for the District of Delaware; (b) the top 20 largest unsecured creditors of the Debtors; (c) counsel to the agent for the Debtors' prepetition, and proposed postpetition, secured lenders; (d) all taxing authorities having jurisdiction over any of the Acquired Assets subject to the sale, including the Internal Revenue Service; (e) the Environmental Protection Agency; (f) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (g) all

parties that have requested special notice pursuant to Bankruptcy Rule 2002; (h) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (i) all Contract Parties; (j) counsel to the Stalking Horse Purchaser; and (k) all potential bidders previously identified or otherwise known to the Debtors, (collectively, the **"Notice Parties"**).

22.     Not later than five (5) days after entry of an Order approving the Bid Procedures Motion, the Debtors shall cause the Sale Notice to be published in the national edition of either The Wall Street Journal or The New York Times, pursuant to Bankruptcy Rule 2002(1). Such publication notice shall be sufficient and proper notice to any other interested parties.

23.     A Qualified Bidder that desires to make a Bid shall deliver written copies of its bid to the Notice Parties not later than 12:00 p.m. (Eastern Time) on _____ __, 2009 (the **"Bid Deadline"**) and shall comply with the requirements set forth in the Bid Procedures in making such a bid for the Acquired Assets.

24.     Not later than _____ __, 2009 at 4:00 p.m. (prevailing Eastern time), the Debtors will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid (the **"Baseline Bid"**) and (ii) the time and place of the Auction, and provide copies of all Qualified Bids to all Qualified Bidders.

25.     Upon conclusion of the bidding, the Auction shall be closed, and Debtors, in consultation with any statutory committee appointed in these chapter 11 cases, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest or otherwise best

offer for the Acquired Assets (the **"Successful Bid"** and the entity submitting such Successful Bid, the **"Successful Bidder"**).

26.     The Debtors shall sell the Acquired Assets to the Successful Bidder upon approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing, to be held before the Honorable _____, Court for the District of Delaware, on _____ __, 2009 at [_:__ _.m], or as soon thereafter as counsel may be heard.

27.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

28.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     Notwithstanding the possible applicability of Federal Rule of Bankruptcy Procedure 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

30.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures.

Dated:  Wilmington, Delaware
        _____ __, 2009

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STANT PARENT CORP., *et al.*,[1] | Case No. 09-_____ (   ) |
| Debtors. | (Joint Administration Pending) |

## BID PROCEDURES[2]

Stant Parent Corp. and its affiliated debtors and debtors-in-possession (collectively the **"Debtors"**) have filed chapter 11 cases pending in the United States Bankruptcy Court in the District of Delaware (the **"Bankruptcy Court"**), jointly administered under Case No. _____. By motion dated July __, 2009 (the **"Motion"**), the Debtors seek, among other things, approval of the process and procedures set forth below (the **"Bid Procedures"**) to effectuate the sale of the Acquired Assets (the **"Transaction"**). The Bid Procedures are designed to facilitate a full and fair bidding process to maximize the value of the Acquired Assets for the benefit of the Debtors' creditors and their bankruptcy estates.

On or before _____, 2009, as further described below, the Bankruptcy Court shall conduct a hearing (the **"Sale Hearing"**) at which time the Debtors shall seek entry of an order (the **"Sale Order"**) authorizing and approving the sale of the Acquired Assets (the **"Proposed Sale"**) to Vapor Acquisition Corp. (the **"Stalking Horse Purchaser"**) or to the Successful Bidder (defined below).[3]

*Asset Purchase Agreement*

On July 27, 2009, the Debtors entered into an asset purchase agreement (the **"Agreement"**) with the Stalking Horse Purchaser, pursuant to which the Stalking Horse Purchaser proposed to acquire the Acquired Assets. The assets to be purchased as part of the Transaction do not include the Excluded Assets. Pursuant to the Agreement, the Stalking Horse Purchaser would provide consideration for the Acquired Assets in an amount equal to the Purchase Price. The Transaction contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code (the **"Bankruptcy Code"**).

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Stant Parent Corp. (7606), Stant Holding Corp. (2025), Stant Corporation (8429), Stant Manufacturing, Inc. (4059), Standard-Thomson Corporation (5751) and Thomson International Corporation (5448).
[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Agreement (defined herein).
[3] "Acquired Assets" shall mean substantially all of the Debtors' assets as more fully set forth in the Agreement.

*Participation Requirements*

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each person (a "**Potential Bidder**") must first deliver (unless previously delivered) to (i) the Debtors, (ii) counsel for the Debtors, (iii) counsel to any statutory committee appointed in these chapter 11 cases (the "**Committee**"), if any, and (iv) counsel to GMAC Commercial Finance LLC, as a lender and agent (in such capacity, the "**Agent**") for the lenders (collectively, the "**Lenders**"), no later than _____ __, 2009, the following items (collectively, the "**Participation Requirements**"):

(a)  Confidentiality Agreement. An executed confidentiality agreement in form and substance reasonably acceptable to the Debtors and the DIP Lenders (each a "**Confidentiality Agreement**"); and

(b)  Identification of Potential Bidder. Identification of the Potential Bidder and any Principals (defined below), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Transaction;

(c)  Proof of Financial Ability to Perform. Within five (5) days after the later of (i) a Potential Bidder's initial access to Due Diligence Materials (as described below) or (ii) the date of entry of the Bidding Procedures Order, written evidence that the Debtors reasonably conclude demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Transaction and provide adequate assurance of future performance under all contracts to be assumed in such contemplated Transaction. Such information should include, inter alia, the following:

(i)  the Potential Bidder's current financial statements (audited if they exist); and

(ii)  any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications.

*Access to Due Diligence Materials*

Upon satisfaction of the Participation Requirements, the Debtors will afford each Potential Bidder due diligence access to the Acquired Assets; provided, however, that (i) the Debtors shall have the right to reasonably limit the due diligence provided to competitors and (ii) the Debtors will have no obligation to provide due diligence access after the Bid Deadline (defined below). The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access for Potential Bidders.

If the Debtors furnish any information related to the Debtors or the Acquired Assets not theretofore given to the Stalking Horse Purchaser, then the Debtors shall immediately make such information available to the Stalking Horse Purchaser.

*Designation as Qualified Bidder*

A **"Qualified Bidder"** is a Potential Bidder that delivers the documents described in subparagraphs (a)-(c) above, and that the Debtors, the Committee and the Agent in their discretion and with assistance from their advisors determine is reasonably likely to submit a bona fide offer that would result in greater cash value being received for the benefit of the Debtors' creditors than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a)-(c) above, the Debtors, the Committee and the Agent, as soon as is practicable, shall determine and the Debtors shall notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Each of the Agent and the Stalking Horse Purchaser is a Qualified Bidder. Notwithstanding any provisions to the contrary herein, the Agent is entitled to credit bid all or a portion of its claims against the Debtors, without otherwise complying with the Bid Procedures, to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

*Bid Deadline*

The deadline for submitting bids by a Qualified Bidder shall be _____ __, 2009, at 12:00 p.m. (Eastern Time) (the **"Bid Deadline"**). A Bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a **"Bid"**) shall deliver written copies of its Bid to: (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Nancy A. Mitchell, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Scott D. Cousins, Esq.); (ii) counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: _____); (iii) counsel to the Committee; (iv) counsel to the Stalking Horse Purchaser, Landis Rath & Cobb, LLC, 919 N. Market Street, Suite 1800, Wilmington, DE 19899 (Attn: William E. Chipman, Jr. Esq.); and (v) counsel to the Agent, Vedder Price P.C., 222 North LaSalle Street, Suite 2600, Chicago, IL 60601 (Attn: Michael M. Eidelman, Esq. and Stephanie K. Hor-Chen, Esq.) and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 North Market Street, P.O. Box 1709, Wilmington, DE 19899 (Attn: David B. Stratton, Esq.) (collectively, the **"Notice Parties"**), by the Bid Deadline.

*Determination of Qualified Bid Status*

To be eligible to participate in the Bidding Process each Qualified Bidder must deliver to the Debtors a written offer so as to be received by the Bid Deadline and that complies with each of the following conditions:

(a) <u>Modified Agreement</u>. The Bid must be on terms that, in the Debtors' business judgment, are substantially the same or better than the terms of the Agreement. A Bid must include fully executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated Transaction. A Bid shall include a black-lined copy of the Agreement (the **"Modified Agreement"**) to show all changes requested by the Bidder, including those related to the Purchase Price.

(b) <u>Acquired Assets</u>. Each Bid shall be for all of the Acquired Assets.

(c) <u>Contingencies</u>. A Bid may not be conditioned on obtaining internal approval, obtaining financing or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

(d) <u>Authorization to Bid</u>. A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

(e) <u>Good Faith Deposit</u>. Each Bid or Combination Bid must be accompanied by a cash deposit in an amount equal to five percent (5%) of the proposed purchase price offered by the Qualified Bidder in its Qualified Bid (the **"Good Faith Deposit"**).

(f) <u>No Fees payable to Qualified Bidder</u>. A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under Bankruptcy Code § 503 related in any way to the submission of its Bid or the Bidding Procedures.

(g) <u>Financing Sources</u>. A Bid must contain evidence of the ability to consummate the Transaction satisfactory to the Debtors with appropriate contact information for all such financing sources.

(g) <u>Minimum Initial Bid Requirement</u>. Each Qualified Bidder's Bid shall have an initial minimum bid requirement equal to the sum of (i) the Purchase Price, (ii) the amount of the Expense Reimbursement and (iii) $200,000 (the **"Minimum Initial Bid"**).

(h) <u>Other Evidence</u>. Each Bid must contain evidence satisfactory to the Debtors that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to be able to timely consummate a purchase of the Acquired Assets if selected as the Successful Bidder (as defined below).

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, in the Debtors' reasonable discretion (taking into account the terms and conditions of any assumed debt obligations), and that satisfies the Bid Deadline requirement above, shall constitute a qualified bid ("**Qualified Bid**"). In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be refunded its Good Faith Deposit and all accumulated interest thereon within three (3) business days after that determination.

*Auction*

Only in the event that the Debtors receive at least one (1) Qualified Bid (other than that of the Stalking Horse Purchaser) by the Bid Deadline, the Debtors shall conduct an auction (the "**Auction**") of the Acquired Assets to determine the highest and otherwise best bid with respect to the Acquired Assets. No later than _____, 2009 at 4:00 p.m. (prevailing Eastern time), the Debtors will notify all Qualified Bidders of (i) the highest or otherwise best Qualified Bid, (the "**Baseline Bid**") and (ii) the time and place of the Auction. The Auction shall commence at __:00 a.m. (prevailing Eastern time) on _____, 2009 at the offices of Greenberg Traurig, LLP, _____.

If, however, no such Qualified Bid other than that of the Stalking Horse Purchaser is received by the Bid Deadline, the Debtors will report the same to the Bankruptcy Court, will declare the Stalking Horse Purchaser the Successful Bidder and will proceed with the Transaction pursuant to the terms of the Agreement, upon entry of an order approving the sale of the Acquired Assets to the Stalking Horse Purchaser.

*Participation in the Auction*

Only the Debtors, the Stalking Horse Purchaser, any representative of the Committee, the Agent and any Qualified Bidder who has timely submitted a Qualified Bid (and professional advisors to each of these parties) may attend the Auction. Only the Stalking Horse Purchaser, the Agent and other Qualified Bidders may make any subsequent Qualified Bids at the Auction.

The Debtors and their professional advisors shall direct and preside over the Auction. Bidding at the Auction shall begin with the Baseline Bid, which, in the event such Baseline Bid is not that of the Stalking Horse Purchaser, shall be in an amount at least equal to the Minimum Initial Bid. All Bids made thereafter shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders and the Stalking Horse Purchaser. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid (as defined below).

*Terms of Overbids*

An "**Overbid**" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. Any Qualified Bidder's initial Overbid shall be at least $100,000 in excess of the Baseline Bid and each subsequent Overbid must be made in increments of at least $100,000 over the previous highest or best bid. Additional consideration in excess of the amount set forth in the Baseline Bid may include a combination of cash and assumed debt obligations;

*provided, however,* any Overbid made by the Stalking Horse Purchaser may only be made pursuant to the express terms of the Agreement.

Each Overbid must comply with the conditions for a Qualified Bid set forth above other than the Minimum Initial Bid requirement. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors accept a higher Qualified Bid as an Overbid. The Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

*Closing the Auction*

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, in consultation with the Committee, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately determine, in the Debtors reasonable discretion (taking into account the terms and conditions of any assumed debt obligations) the highest or otherwise best offer for the Acquired Assets (the **"Successful Bid"**) and the entity submitting such Successful Bid, (the **"Successful Bidder"**), and the next highest or otherwise best offer after the Successful Bid (the **"Back-Up Bid"**) and the entity submitting such Back-Up Bid, the **"Back-Up Bidder"**), and advise the Qualified Bidders of such determinations. If the Stalking Horse Purchaser's final bid is deemed to the highest and best bid at the Auction, the Stalking Horse Purchaser shall be the Successful Bidder. The Back-Up Bid shall remain open, and the Back-Up Bidder shall be required to fully perform under such Back-Up Bid, until consummation of the sale with the Successful Bidder.

*Failure to Close*

In the event the Successful Bidder (unless the Successful Bidder is the Stalking Horse Purchaser) fails to consummate the sale as a result of the Successful Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, the Debtors shall: (i) retain the Successful Bidder's Good Faith Deposit as liquidated damages; and (ii) in consultation with the Committee, be free to enter into a new purchase agreement with the next most appropriate Qualified Bidder at the highest price bid by such Qualified Bidder at the Auction.

Following the approval of the sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved sale within ten (10) days after entry of an Order approving the Sale, the Debtors shall be authorized, but not required, to deem the Back-Up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors, in consultation with the Committee, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting such Back-Up Bid without further order of the Bankruptcy Court.

*Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any

disputes relating to the Auction, and the construction and enforcement of the Qualified Bidder's contemplated Transaction documents, as applicable.

*Acceptance of Successful Bid*

The Debtors shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

*Free of Any and All Interests*

As set forth in the Agreement, except as otherwise provided for therein or in another Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the **"Interests"**), in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Acquired Assets.

*Credit Bidding*

The Agent shall be entitled to credit bid all or a portion of its claims against the Debtors to the fullest extent permissible under section 363(k) of the Bankruptcy Code.

*Sale Hearing*

The Sale Hearing shall be conducted by the Bankruptcy Court on or before _____ __, 2009.

*Return of Good Faith Deposit*

The Good Faith Deposit of the Successful Bidder shall be applied to the Purchase Price of such transaction at Closing. The Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until the Termination Date, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

*Modifications*

The Bid Procedures may not be modified except with the express written consent of the Debtors, the Agent and the Committee.

The Debtors, in consultation with the Committee, in their reasonable discretion, may (a) determine, which Qualified Bid, if any, is the highest or otherwise best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is

(i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors.

*NY 239,678,423v4*

# Exhibit 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STANT PARENT CORP., *et al.*,[1] | Case No. 09-_____ (  ) |
| Debtors. | (Joint Administration Pending) |

## NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING IN CONNECTION WITH THE SALE OF <u>SUBSTANTIALLY ALL OF THE DEBTORS ASSETS</u>

NOTICE IS HEREBY GIVEN, as follows:

        1.     On July 27, 2009, the above-captioned debtors and debtors in possession (the **"Debtors"**) filed a motion seeking approval of among other things (i) bid procedures (the **"Bid Procedures"**) and bid protections in connection with the sale of substantially all of the Debtors' assets (the **"Acquired Assets"**); (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors; and (iii) related relief (the **"Bid Procedures Motion"**) with the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**). By order dated _____, 2009, the Bankruptcy Court approved the Bid Procedures and the Bid Procedures Motion (the **"Bid Procedures Order"**).

        2.     The Debtors have entered into an asset purchase agreement (the **"Agreement"**) with _____ (the **"Stalking Horse Bidder"**) for the sale of the assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon to the maximum extent permitted by section 363 of the Bankruptcy Code, but as set forth in the Bid Procedures, the sale of the Acquired Assets remains subject to competing offers from any prospective bidder that submits a Qualified Bid (as defined in the Bid Procedures attached to the Bid Procedures Order).

        3.     All interested parties are invited to submit a Qualified Bid and to make offers to purchase the Acquired Assets in accordance with the terms of the Bid Procedures and the Bid Procedures Order, copies of which are included herewith. The deadline to submit bids (the **"Bid Deadline"**) is _____, 2009 at 4:00 p.m. (prevailing Eastern time).

        4.     Pursuant to the Bid Procedures Order, the Debtors may conduct an auction (the **"Auction"**) for the sale of the Acquired Assets at the offices of Greenberg Traurig, LLP,

---

[1] The Debtors are the following entities: Stant Parent Corp. (7606), Stant Holding Corp. (2025), Stant Corporation (8429), Stant Manufacturing, Inc. (4059), Standard-Thomson Corporation (5751) and Thomson International Corporation (5448).

200 Park Avenue, New York, New York 10166, on _____ ___, 2009 at 10:00 a.m. (prevailing Eastern time), or at such other place and time as the Debtors shall notify all parties that submitted Qualified Bids.

5.    At a hearing on _____ ___, 2009 at _____ a.m. (prevailing Eastern time) or such other time as the Bankruptcy Court shall determine (the **"Sale Hearing"**), the Debtors intend to seek the Bankruptcy Court's approval of the sale of the Acquired Assets to the Stalking Horse Bidder pursuant to the terms of the Agreement, or to a bidder submitting the highest, best or otherwise financially superior offer at the Auction (the **"Successful Bidder"**). The Sale Hearing will be held before the Honorable _____, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor, Courtroom No. ___, Wilmington, Delaware 19801.

6.    At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these chapter 11 cases. Objections, if any, to the sale of the Acquired Assets pursuant to the terms of the agreement reached between the Debtors and the Stalking Horse Bidder or Successful Bidder shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the District of Delaware, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estate or properties, the basis for the objection and the specific grounds therefore, and shall be filed with the Bankruptcy Court and be served upon: (i) counsel for the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, NY 10166 (Attn: Nancy A. Mitchell, Esq.) and Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Scott D. Cousins, Esq.); (ii) counsel to the Stalking Horse Bidder, Landis, Rath & Cobb, LLP, 919 N. Market Street, Suite 1800, Wilmington, DE 19899 (Attn: William E. Chipman, Jr., Esq.); (iii) counsel to any statutory committee appointed in these chapter 11 cases; and (iv), counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: _____), _____, not later than 4:00 p.m. (prevailing Eastern time) on _____ ___, 2009.

7.    Requests for a copy of the Agreement or for any other information concerning the sale of the Acquired Assets should be directed by written request to Debtors' counsel.

Dated: _____, 2009       GREENBERG TRAURIG, LLP

_____
Scott D. Cousins (DE Bar No. 3079)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
          selzers@gtlaw.com

-and-

Nancy A. Mitchell
Alan J. Brody
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com
          brodya@gtlaw.com

Proposed Counsel for the Debtors
   and Debtors-in-Possession

# Exhibit 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STANT PARENT CORP., *et al.*,[1] | Case No. 09-_____ ( ) |
| Debtors. | (Joint Administration Pending) |

## NOTICE OF DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN LEASES AND EXECUTORY CONTRACTS AND FIXING OF CURE AMOUNTS

PLEASE TAKE NOTICE that, on July 27, 2009, the above-captioned debtors and debtors in possession (the **"Debtors"**) filed a motion seeking approval of, among other things (i) bid procedures (the **"Bid Procedures"**) and bid protections in connection with the sale of substantially all of the Debtors' assets (the **"Acquired Assets"**); (ii) procedures to determine cure amounts and deadlines for objections to certain contracts and leases to be assumed and assigned by the Debtors; and (iii) related relief (the **"Bid Procedures Motion"**) with the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**). By order dated _____ __, 2009, the Bankruptcy Court approved the Bid Procedures and the Bid Procedures Motion (the **"Bid Procedures Order"**). A copy of the Bid Procedures Order is annexed hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE, that at a hearing on _____ __, 2009 at _____ (ET) or such other time as the Bankruptcy Court shall determine (the **"Sale Hearing"**), the Debtors intend to seek approval of the sale of the Acquired Assets free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Stant Parent Corp. (7606), Stant Holding Corp. (2025), Stant Corporation (8429), Stant Manufacturing, Inc. (4059), Standard-Thomson Corporation (5751) and Thomson International Corporation (5448).

thereon to the maximum extent permitted by section 363 of the Bankruptcy Code (the **"Sale"**) to Vapor Acquisition Corp. (the **"Stalking Horse Bidder"**) pursuant to the terms of a purchase agreement with the Stalking Horse Bidder (the **"Agreement"**).

PLEASE TAKE FURTHER NOTICE that, pursuant to the Cure Procedures, at the Sale Hearing, the Debtors intend to seek to assume and assign certain unexpired leases and executory contracts (collectively, the **"Assumed Contracts"**) to the Stalking Horse Bidder pursuant to section 365 of the Bankruptcy Code. You have been identified as a party to an Assumed Contract that the Debtors may seek to assume and assign. The Assumed Contract with respect to which you have been identified as a non-Debtor party, the corresponding proposed cure amount (the **"Cure Amount"**), and the identity of the applicable Stalking Horse Bidder, are set forth on Exhibit B annexed hereto.

PLEASE TAKE FURTHER NOTICE that, the Debtors believe that any and all defaults (other than the filing of these chapter 11 cases) and actual pecuniary losses under the Assumed Contract can be cured by the payment of the Cure Amount.

PLEASE TAKE FURTHER NOTICE that, any party objecting to (i) any Cure Amount and/or (ii) the proposed assumption and assignment of any Assumed and Assigned Contract in connection with the Sale must file with the Bankruptcy Court and serve an objection (a **"Contract Objection"**), in writing, setting forth with specificity any and all cure obligations that the objecting party asserts must be cured or satisfied in respect to the Assumed and Assigned Contract, and/or any and all objections to the potential assumption and assignment of such agreement, together with all documentation supporting such cure claim or objection, upon: (i) counsel to the Debtors, Greenberg Traurig, LLP, 200 Park Avenue, New York, New York 10166 (Attn: Nancy A. Mitchell, Esq.) and Greenberg Traurig, LLP, The Nemours Building,

1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Scott D. Cousins, Esq.); (ii) counsel to the Stalking Horse Bidder, Landis, Rath & Cobb, LLP, 919 N. Market Street, Suite 1800, Wilmington, DE 19899 (Attn: William E. Chipman, Jr., Esq.); (iii) counsel to any statutory committee appointed in these chapter 11 cases; and (iv), counsel to the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: _____); so as to be received no later than 4:00 p.m. (ET) on _____ __, 2009 (the **"Contract Objection Deadline"**). Unless the Contract Objection is timely filed and served, the assumption, sale and assignment of the applicable Assumed Contract will proceed without further notice.

PLEASE TAKE FURTHER NOTICE that, if no Cure Amount is due under the Assumed Contract, and the non-Debtor party to such agreement does not otherwise object to the Debtors' assumption, sale and assignment of such agreement, no further action need to be taken on the part of that non-Debtor party.

PLEASE TAKE FURTHER NOTICE that, any person or entity receiving this Notice that fails to file an objection on a timely basis (a) shall be forever enjoined and barred from seeking any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates, or the Stalking Horse Bidder on account of the assumption and assignment of such executory contract or unexpired lease and deemed to have consented to the proposed assumption and assignment; and (b) upon approval by the Bankruptcy Court of the assignment to the Stalking Horse Bidder of the Assumed Contracts, shall be deemed to have waived any right to object, consent, condition or otherwise restrict any such assumption and assignment.

PLEASE TAKE FURTHER NOTICE that, a hearing on Contract Objections may be held (a) at the Sale Hearing, or (b) at such other date prior to or after the Sale Hearing as the Bankruptcy Court may designate upon request by the Debtors.

PLEASE TAKE FURTHER NOTICE that, the Debtors' decision to assume and assign the Assumed Contracts is subject to the Court's approval and consummation of the Sale. Absent consummation of the Sale, each Assumed Contract shall not be deemed either assumed or assigned and shall in all respects be subject to further administration under the Bankruptcy Code. The designation of any agreement as an Assumed Contract shall not constitute or be deemed to be a determination or admission by the Debtors or the Stalking Horse Bidder that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

PLEASE TAKE FURTHER NOTICE that, Debtors reserve the right to remove any Assumed Contract from any proposed asset sale and to withdraw the request to assume and assign any such Assumed Contract.

Dated: _____, 2009
      Wilmington, Delaware

GREENBERG TRAURIG, LLP

_____

Scott D. Cousins (DE Bar No. 3079)
Sandra G. M. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
      selzers@gtlaw.com

-and-

Nancy A. Mitchell
Alan J. Brody
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com
      brodya@gtlaw.com

Proposed Counsel for the Debtors
    and Debtors-in-Possession