# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STANT PARENT CORP., *et al.*,[1] | Case No. 09- *12647* (   ) |
| Debtors. | (Joint Administration Pending) |

## EMERGENCY MOTION OF THE DEBTORS FOR INTERIM ORDER (I) AUTHORIZING CONTINUED SECURED POST-PETITION FINANCING; (II) GRANTING SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL; (IV)GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING; AND (VI) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby move the Court (the "**Motion**") for the entry of the proposed interim order (the "**Interim Order**") in substantially the form attached hereto as **Exhibit "A"**, and a final order (the "Final Order") (a) authorizing the Debtors to, pursuant to Sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**") and Rules 2002, 4001(b), (c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), *inter alia*, (i) obtain secured post-petition loans, advances and other accommodations pursuant to the Pre-Petition Agreements (defined below), as amended hereby, and the Post-Petition Amendment to Loan and Security Agreement (the "**Post-Petition Amendment**") in substantially the form attached hereto as **Exhibit "B"**, up to an aggregate principal amount not to exceed $11,000,000 (the "**Post-Petition Financing**") from GMAC Commercial Finance LLC, as a lender and agent (in such capacity, the "Agent") for

---

[1] The Debtors are the following entities: Stant Parent Corp. (7606), Stant Holding Corp. (2025), Stant Corporation (8429), Stant Manufacturing, Inc. (4059), Standard-Thomson Corporation (5751) and Thomson International Corporation (5448).

the lenders (collectively, the "**Lenders**")[2] , (ii) grant the Lenders, pursuant to Bankruptcy Code §§ 364(c) and 364(d), security interests in all of the Debtors' presently owned and after-acquired property and Pre-Petition Collateral (as defined below) and (iii) grant the Lenders, pursuant to Bankruptcy Code § 364(c)(1), priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than in respect of the Carve-Out (as defined below); (b) pursuant to Bankruptcy Code § 363(c), authorizing the use of Cash Collateral (as defined below) and, pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d), providing adequate protection to the Lenders with respect to any diminution in the value of the Lenders' interest in the Pre-Petition Collateral resulting from the priming liens and security interests to be granted herein pursuant to Bankruptcy Code § 364(d) to secure the Post-Petition Financing, the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than Cash Collateral) and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a); and (c) requesting that a final hearing (the "**Final Hearing**") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order authorizing on a final basis, *inter alia*, the Post-Petition Financing and the use of Cash Collateral (the "**Final Order**").

## Status of the Case and Jurisdiction

1.      On the date hereof (the "**Petition Date**"), the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

---

[2]Pursuant to that certain Participation Agreement dated as of July 27, 2009 (the "**Participation Agreement**"), H.I.G. Capital Partners IV, L.P. ("**HIG**"), purchased a $6,000,000 participation in the Post-Petition Financing. HIG Stant IV, LLC, an affiliate of HIG, is the majority shareholder of Stant Parent Corp. None of the HIG entities are affiliated with the Agent or the Lenders.

2.     The Debtors have continued in the possession of their property and are operating and managing the business as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     No request for a trustee or examiner has been made and a creditors' committee has not yet been appointed in these cases.

4.     This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is core within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

5.     Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. § 1408.

6.     The statutory predicates for the relief sought herein are Sections 105, 361, 362, 363, 364, 507, and 552 of the Bankruptcy Code and Rule 4001(c) of the Bankruptcy Rules.

### Bankruptcy Rule 4001 Concise Statement

7.     By this Motion, the Debtors request:

(a)     the entry of a proposed Interim Order in substantially the form attached hereto as **Exhibit "A"** and a Final Order authorizing the Debtors:

(i)     to obtain secured post-petition loans, advances and other accommodations pursuant to the Pre-Petition Agreements, as amended hereby, and the Post-Petition Amendment, up to an aggregate principal amount not to exceed $11,000,000 from the Lenders;

(ii)     to grant the Lenders, pursuant to Bankruptcy Code §§ 364(c) and 364(d), security interests in all of the Debtors' presently owned and after-acquired property and Pre-Petition Collateral;

(iii)     to grant the Lenders, pursuant to Bankruptcy Code § 364(c)(1), priority in payment with respect to the Post-Petition Financing over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than in respect of the Carve-Out (as defined below);

(iv) to use Cash Collateral, pursuant to Bankruptcy Code § 363(c), and, to provide adequate protection to the Lenders, pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d), with respect to any diminution in the value of the Lenders' interest in the Pre-Petition Collateral resulting from the priming liens and security interests to be granted herein pursuant to Bankruptcy Code § 364(d) to secure the Post-Petition Financing, the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than Cash Collateral) and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a); and

(b) in accordance with Bankruptcy Rule 4001(c)(2), that this Court schedule the Final Hearing and approve notice with respect thereto.

8. The material provisions of the proposed debtor-in-possession financing and use of Cash Collateral are summarized as follows and set forth in the following sections of the Post-Petition Amendment and/or, as applicable, the Interim Order:

(a) <u>Borrowers</u>: The Debtors. *See* page 1 of the Interim Order.

(b) <u>Agent</u>: GMAC Commercial Finance, LLC. *See* page 1 of the Post-Petition Amendment.

(c) <u>Lenders</u>: GMAC Commercial Finance, LLC, RBS Citizens, National Association, ING Capital LLC, and The Huntington National Bank. *See* page 1 of the Post-Petition Amendment.

(d) <u>Commitment</u>: A maximum amount not to exceed Eleven Million Dollars ($11,000,000.00) at any one time outstanding (or such other amount as provided in the Post-Petition Amendment) of revolving loans to be advanced pursuant to the Budget (defined below). *See* <u>Appendix A</u> of the Post-Petition Amendment.

(e) <u>Termination Date</u>: The date which is the earlier of (a) September 30, 2009, (b) the closing of the sale of all or substantially all of the Borrowers' assets pursuant to an order from the Bankruptcy Court, (c) the date that is ten (10) days after the Bankruptcy Court's order approving a sale of all or substantially all of Borrowers' assets and (d) the occurrence of a Default or an Event of Default under the Interim Order or Final Order. *See* Definition of "Termination Date" in Section 3(t) of the Post-Petition Amendment. *See also* Budget attached hereto as **Exhibit "C"** (the "**Budget**").

(f)     Purpose:  The proceeds of any loans and financial accommodations made under the Post-Petition Financing (the "**Loans**"), the Cash Collateral and other Collateral (defined below) shall be used by the Debtors as provided and limited by the Budget, for operation of the Debtors' businesses and the administration of these Chapter 11 Cases (all such Loans shall collectively constitute, the "**Post-Petition Indebtedness**"), provided, that (i) the proposed Loans or use of Cash Collateral or other Collateral is consistent with the terms of (a) the Interim Order or Final Order (including the Budget), (b) the Pre-Petition Agreements, as modified by the Interim Order, and (c) the Post-Petition Amendment (collectively, the "**Operative Documents**"), and will only be used to pay, when due (or, in the case of certain professional fees, when allowed), the expenses set forth in the Budget (subject to the variances set forth in paragraph 4 of the Interim Order), and (ii) any requested Post-Petition Financing is necessary after the use of available Cash Collateral.  Neither the Post-Petition Financing nor the Carve-Out may be used to (a) contest, hinder or delay the Lenders' enforcement of this Order or the Lenders' realization upon any of the Pre-Petition Collateral or Post-Petition Collateral (subject to the terms of the Interim Order or Final Order); (b) obtain or negotiate the terms of indebtedness other than the Post-Petition Indebtedness; (c) prosecute any claim or action, the primary purpose of which is to invalidate, set aside avoid or subordinate, in whole or in part, the Pre-Petition Indebtedness or the Post-Petition Indebtedness, the Agent and the Lenders' security interests in the Pre-Petition Collateral or Post-Petition Collateral; (d) object to, contest or raise any defense to the validity, perfection, priority, extent or enforceability of the Pre-Petition Indebtedness, the Post-Petition Indebtedness, the Agent and the Lenders' security interests in the Pre-Petition Collateral or Post-Petition Collateral; or (e) assert any claims, counterclaims, defenses or causes of action against the Agent or the Lenders.  Moreover, no Loans, Collateral, Cash Collateral, or any portion of the Carve-Out may be used to prosecute, object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Indebtedness or Post-Petition Indebtedness or the liens securing the Pre-Petition Indebtedness or Post-Petition Indebtedness, or to prosecute or assert any claims or causes of action against the Lenders; provided, however, the Committee may use up to $25,000 of such amounts to investigate any claims or causes of action against the Agent and/or the Lenders respecting the Pre-Petition Indebtedness or Post-Petition Indebtedness or the liens securing the Pre-Petition Indebtedness or Post-Petition Indebtedness, or to prosecute or assert any claims or causes of action against the Agent and/or the Lenders.  *See* Interim Order, at paragraphs 2 and 15.

(g)     Priority and Liens:  As security for the Post-Petition Indebtedness, the Agent and the Lenders shall continue to have and be granted pursuant to Bankruptcy Code § 364(d), as of the Petition Date (without the necessity

of the recordation of mortgages, security agreements, pledge agreements, assignments, control agreements, financing statements or otherwise), (a) valid, perfected, priming, first priority senior security interests in, and liens on all property and interests in property acquired by the Debtors and the Debtors' estates from and after the Petition Date, (as further described in the Interim Order, the "**Post-Petition Collateral**"), and (b) a valid, perfected and senior security interest in, and lien on, the Pre-Petition Collateral, junior only to any valid, enforceable, properly perfected, unavoidable prepetition lien and security interest in the Pre-Petition Collateral (collectively, the "**Collateral**"). Except to the extent expressly set forth in the Interim Order, the liens granted pursuant to the Interim Order and the Pre-Petition Agreements to the Agent and the Lenders to secure the Post-Petition Indebtedness shall not be subordinated to or made *pari passu* with any other lien or security interest. The provisions of any intercreditor agreements or subordination agreements which subordinate liens and security interests to the liens and security interests of the Agent or the Lenders or other indentures which subordinate any claims to the claims of the Agent or the Lenders (including, without limitation, (x) the Subordination and Intercreditor Agreement dated June 18, 2008, between the Agent and Northstar Mezzanine Partners V L.P. ("**Northstar**"); and (y) the Subordination Agreement dated as of June 18, 2008 by and among the Agent, Tomkins Corporation and Northstar), shall remain in full force and effect, be governed, in all respects, by Bankruptcy Code §510 and shall continue with respect to the liens and security interests granted to the Lenders in the Collateral. In accordance with Bankruptcy Code §364(c)(1), the Post-Petition Indebtedness shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 (the "**Superpriority Claims**"), and shall at all times be senior to the rights of the Debtors and any subsequently appointed Chapter 7 or Chapter 11 trustee, and any of the Debtors' creditors. Subject only to the Carve-Out, no cost or expense of administration under Bankruptcy Code §§ 105, 364(c)(1), 503(b), 507(b) or otherwise, including those resulting from the conversion of any of the Chapter 11 cases pursuant to Bankruptcy Code § 1112, shall be senior to, or *pari passu* with, the Superpriority Claims of the Lenders arising out of the Post-Petition Indebtedness. The Agent and the Lenders shall be granted as of the Petition Date (without the necessity of the recordation of mortgages, security agreements, pledge agreements, assignments, control agreements, financing statements or otherwise), (i) pursuant to Bankruptcy Code § 364(c)(2), valid and perfected first priority senior security interests in, and liens on, all property of the Debtors' estates (other than the Collateral) that is not otherwise encumbered by a validly perfected security interest or lien senior to security interests and liens of the Lenders, and (ii) pursuant to Bankruptcy

Code § 364(c)(3), second priority, junior perfected liens on and security interests in the property of the Debtors' estates, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens (including the Collateral). *See* Interim Order, at paragraphs 5-7.

(h)    <u>Carve-Out</u>:  The Interim Order provides for a limited carve-out (the "**Carve-Out**") for (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code; and (ii) to the extent not otherwise payable from proceeds of Pre-Petition Collateral or Post-Petition Collateral, all allowed fees and expenses incurred in the Chapter 11 Cases by professionals retained by the Debtors or by the Committee (collectively, the "<u>Retained Professionals</u>") and individual Committee members in amount not to exceed the sum of (A) (1) all allowed fees and expenses incurred by the Retained Professionals prior to the occurrence of the Termination Date (whether allowed before or after the Termination Date), and (2) individual Committee members accrued and unpaid expenses incurred prior to the occurrence of the Termination Date, in both cases not to exceed the amounts set forth in the Budget, <u>plus</u> (B) after the occurrence of the Termination Date, an amount not to exceed the lesser of the remaining availability under the Post-Petition Financing or $100,000 in the aggregate, <u>less</u> (C) (1) unapplied pre-petition retainers, and (2) the amounts allowed and paid to such Retained Professionals in these Chapter 11 Cases (including, without limitation, from the Professional Fee Account (as defined in the Interim Order)). *See* Interim Order, at paragraph 13.

(i)    <u>Interest</u>:  In the case of LIBOR Loans, LIBOR plus five and three quarters of one percent (5.75%) (subject to a two and three quarters of one percent (2.75%) floor), and in the case of Base Rate Loans, the Base Rate plus four and three quarters of one percent (4.75%) (subject to a three and three quarters of one percent (3.75%) floor) *See* Post-Petition Amendment, at section 3(ff).

(j)    <u>Events of Default</u>:  The Events of Default under the Interim Order include the following: (i) the entry of an order dismissing any of these Chapter 11 Cases or converting any of these Chapter 11 Cases to Chapter 7 cases, (ii) the entry of an order appointing a Chapter 11 trustee in any of these Chapter 11 Cases, (iii) the entry of an order granting a superpriority claim or lien (other than a Prior Permitted Lien) equal or superior to the claims and liens granted to the Lenders without the Requisite Lenders' prior written consent; (iv) the entry of an order staying, reversing, vacating or otherwise modifying the Post-Petition Financing under the Interim Order (except as modified in a final order acceptable to the Agent and the Lenders) without the Lenders' prior written consent, (v) the entry of an

order in any of these Chapter 11 Cases appointing an examiner having enlarged powers beyond those set forth under Bankruptcy Code § 1106(a)(3) and (4), (vi) an Event of Default or Default under the Pre-Petition Agreements (as modified by the Post-Petition Amendment) or the Post-Petition Amendment, (vii) any material representation or material warranty by the Debtors that is incorrect or misleading in any material respect when made, (viii) the occurrence of a post-petition, material adverse change in the operation of the Debtors' business, (ix) the entry of any order granting any relief from the automatic stay allowing a third party to proceed against any material asset or assets of the Debtors (including, without limitation, the exercise of setoff rights), other than relating to assets subject to Prior Permitted Liens which if granted will not materially or adversely affect current operations, (x) the commencement of any actions adverse to the Lenders or their rights and remedies under the Interim Order, the Final Order approving this Motion, or any other Bankruptcy Court order (not including any objections to the Final Order), (xi) the entry of an order confirming a plan of reorganization in these Chapter 11 Cases, unless such plan provides for payment in full, in cash, of all Pre-Petition Indebtedness and Post-Petition Indebtedness on or before the effective date of such plan, (xii) the Debtor's failure to retain (prior to the Final Hearing) a CRO reasonably acceptable to the Lenders through the conclusion of the Sale Process, (xiii) the expenditures of the Debtors exceed, or the collections are less than (subject to the variances set forth in ¶4 of the Interim Order), the amounts set forth in the Budget, (xiv) any other failure of the Debtors to perform in any material respect any of their obligations pursuant to the Order, including, without limitation, failure to make payments to the Lenders contemplated in the Budget or in the Order; (xv) the Debtors' filing, without the express written consent of the Lenders, of (i) a motion for the use of Cash Collateral, (ii) a motion requesting authority to incur indebtedness either (A) having administrative expense priority equal or superior to the administrative expense priority granted to the Agent and the Lenders under the Interim Order or (B) secured by a security interest or lien with priority equal or superior to the priority of the Lenders' security interests in or liens on the Pre-Petition Collateral and the Post-Petition Collateral; and (xvi) the Debtor's failure to meet certain sale milestones. *See* Interim Order, at paragraph 19.

(k)     <u>Waiver of Applicable Nonbankruptcy Law Relating to Perfection</u>: The Interim Order and the Final Order are deemed to be sufficient and conclusive evidence of the priority, perfection, and validity of the postpetition liens and security interests granted therein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the subject collateral, or other act

to validate or perfect such security interest or lien. *See* Interim Order, at paragraph 11.

(l) <u>Relief From Automatic Stay</u>: The automatic stay provisions of Bankruptcy Code § 362 are modified and vacated to the extent necessary to permit the Agent or the Lenders to perform any act authorized or permitted under the Interim Order or the Final Order, as applicable, and the Post-Petition Amendment, including to allow them to apply the proceeds of accounts receivable and other Collateral to the Post-Petition Indebtedness as follows: (i) first, to the payment of all costs, fees and expenses, including attorneys' fees of the Agent and the Lenders; (ii) second, to the payment of all other Post-Petition Indebtedness other than principal, including all accrued and accruing interest; and (iii) third, to the payment of the Post-Petition Indebtedness consisting of principal. Additionally, upon the occurrence of a Default or an Event of Default, and after providing three (3) business days prior written notice to the Debtors, the office of the United States Trustee, and the Committee (once formed), the Lenders may terminate the Post-Petition Financing facility and declare the Loans to be immediately due and payable, and the automatic stay pursuant to Bankruptcy Code § 362(a) shall be deemed lifted and modified, without further Order of this Court, to permit the Agent and the Lenders to exercise any and all of their rights and remedies under the Operative Documents. *See* Interim Order, at paragraphs 18 and 20.

(m) <u>Waiver of Section 506(c) Surcharge</u>: Subject to the entry of the Final Order and except for the Carve-Out, no costs and expenses incurred in connection with the administration of these Chapter 11 Cases or any conversion of these Chapter 11 Cases pursuant to Bankruptcy Code §1112, or in any future proceedings or cases related hereto, whether incurred pursuant to Bankruptcy Code §726(b) or otherwise, shall be charged against the Pre-Petition Indebtedness, the Post-Petition Indebtedness, the Pre-Petition Collateral or the Post-Petition Collateral, pursuant to Bankruptcy Code §506(c) or otherwise, upon entry of the Final Order, without the express written consent of the Lenders. Subject to the entry of the Final Order, the Debtors, for themselves and their respective estates, shall be deemed to waive and may not assert rights, claims and benefits under §552(b) of the Bankruptcy Code. *See* Interim Order, at paragraph 14.

(n) <u>Consent to the Use of Cash Collateral</u>: The Debtors acknowledge that their cash constitutes proceeds of the Pre-Petition Collateral and, therefore, is cash collateral of the Lenders within the meaning of Bankruptcy Code § 363(a) ("**Cash Collateral**"). The Agent and the Lenders consent to the use of their Cash Collateral under the Interim Order as provided therein, <u>provided</u> the Lenders are granted adequate protection for any diminution in the value of the Pre-Petition Collateral resulting

from (a) the liens and security interests granted by the Post-Petition Financing and the Interim Order or otherwise pursuant to Bankruptcy Code § 364(d), (b) the Debtor's use of Cash Collateral pursuant to Bankruptcy Code § 363(c), (c) the use, sale or lease of the Lenders' collateral (other than Cash Collateral) pursuant to Bankruptcy Code § 363(c) and (d) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a). *See* Interim Order, at paragraph 16.

(o)  Adequate Protection:  As adequate protection with respect to, *inter alia*, the use of the Lenders' Cash Collateral, at all times prior to the Termination Date, the Debtors shall pay to the Agent (for the benefit of the Lenders), when due, interest on that portion of the Pre-Petition Indebtedness consisting of Revolving Loans (regardless of whether such amounts appear in the Budget) at the applicable non-default rate in existence as of the Petition Date.  Additionally, the Lenders shall be granted (i) effective upon the date of the Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise, valid and perfected, replacement security interests in, and liens on (the "**Replacement Liens**"), all of the Debtors' right, title and interest in, to and under the Collateral, subject only to (x) the Liens granted pursuant to the Interim Order or Final Order, as applicable, the Post-Petition Amendment and the Pre-Petition Agreements to the Lenders to secure the Post-Petition Indebtedness; (y) any Prior Permitted Liens (after giving effect to the Interim Order or Final Order, as applicable) prior in interest and senior to the Liens granted to the Lenders pursuant to the Interim Order or the Final Order and the Pre-Petition Agreements and (z) the Carve-Out and the statutory fees of the Office of the United States Trustee; and (ii) pursuant to Bankruptcy Code § 364(c)(1), Superpriority Claims, junior only to (x) the Superpriority Claims granted pursuant to this Order to the Lenders in respect of the Post-Petition Financing; and (y) the Carve-Out and the statutory fees of the Office of the United States Trustee. *See* Interim Order, at paragraph 16.

(p)  Challenge Period.  A party in interest (other than the Debtors, the Loan Parties and their respective direct and indirect shareholders) has until no later than September 23, 2009 (or such later date agreed to in writing by the Lenders) to commenced an adversary proceeding challenging the extent, validity, perfection, priority and enforceability of the Lenders' liens on the Pre-Petition Collateral or any other claims whatsoever of the Lenders, including any claims arising from or related to the fees, charges, interest, commissions and expenses charged by the Lenders prior to the Petition Date pursuant to the terms of the Pre-Petition Agreements. *See* Interim Order at paragraph 11.

## **Background**

9.     On the date hereof (the "**Petition Date**"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (these "**Chapter 11 Cases**").  The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not yet been appointed in these Cases.

10.    The Debtors and their non-Debtor affiliates are a leading, integrated manufacturer of highly engineered fluid systems for the global automotive and industrial original equipment markets and automotive aftermarket.  The Debtors are private entities incorporated in Delaware.  The Debtors maintain their global headquarters in Connersville, Indiana, and their North American manufacturing facility in Pine Bluff, Arkansas.

11.    A more detailed factual background of the Debtors' businesses and operations, as well as the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Philip Fitzpatrick in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief*, filed contemporaneously herewith and incorporated herein by reference.

### The Pre-Petition Financing

12.    On or about June 18, 2008, Stant Holding Corp. ("**Stant Holding**"), Stant Corporation ("**Stant**"), Standard-Thomson Corporation ("**STC**"), Thomson International Corporation ("**Thomson**"), Stant Manufacturing, Inc. ("**Stant Manufacturing**"), and together with Stant Holding, Stant, STC and Thomson, individually, each a "**Borrower**," and collectively, the ("**Borrowers**"), Stant Parent Corp., as guarantor, the Agent and the Lenders entered into that certain Loan and Security Agreement (as the same may have been amended, supplemented or otherwise modified or restated from time to the Petition Date, the "**Loan Agreement**" and

collectively with all pre-petition documents executed in connection therewith, the "**Pre-Petition Agreements**"), a copy of which is attached hereto as **Exhibit "D"**, pursuant to which, *inter alia*, the Lenders agreed to make certain loans and financial accommodations to the Borrowers in the aggregate principal amount of up to $70,000,000, comprised of a revolving credit facility in the principal amount of up to $30,000,000 (including a swingline loan), and a term loan facility in the principal amount of $40,000,000, which loans are secured by senior liens on, and security interests in, substantially all of the Debtors' assets, including, without limitation, all (1) Accounts; (2) Chattel Paper; (3) Commercial Tort Claims; (4) (i) all Deposit Accounts of the Loan Parties and (ii) all cash and other monies and property of any Loan Party in the possession of or under the control of the Agent or any Lender; (5) Documents; (6) Equipment; (7) Fixtures; (8) General Intangibles (including Intellectual Property); (9) Goods; (10) Instruments; (11) Inventory; (12) Investment Property; (13) Letter-of-Credit Rights and Supporting Obligations; (14) other personal property; (15) Mortgaged Property; (16) all books, records, ledger cards, files, correspondence, computer programs, tapes, disks and related data processing software that at any time evidence or contain information relating to any of the property described above or are otherwise necessary or helpful in the collection thereof or realization thereon; (17) Proceeds and products of all or any of the property described above; and (18) the equity interests pledged to the Agent pursuant to the Pledge Agreements, to the extent set forth in the Pledge Agreements (collectively, including Cash Collateral (as defined below), the "**Pre-Petition Collateral**"). Approximately $62,051,487.61 (inclusive of interest, facility fees, costs, expenses, swap exposure and indemnities), plus (i) outstanding letter of credit exposure, plus (ii) other fees, costs, expenses and indemnities as provided for in the Pre-Petition Agreements was outstanding under the Pre-Petition Agreement as of Petition Date.

13.     On or about June 18, 2008, the Borrowers, Stant Parent Corp., as guarantor, and Northstar entered into a Note Purchase Agreement, pursuant to which the Borrowers issued and delivered to Northstar one or more notes dated as of the date thereof (collectively, the **"Junior Pre-Petition Notes"**) in an aggregate principal amount of Twenty-Three Million Dollars $23,000,000. The Junior Pre-Petition Notes are allegedly secured by a second lien on, and security interest in, the Pre-Petition Collateral. Approximately $25,218,778.71 was outstanding under the Junior Pre-Petition Notes as of July 22, 2009.

14.     On or about June 18, 2008, the Agent, on behalf of the Lenders as Senior Lenders, and Northstar entered into that certain Subordination and Intercreditor Agreement (the **"Intercreditor Agreement"**), which sets forth the respective rights and obligations of the Debtors' secured lenders, including, *inter alia*, the priority of payment to such lenders, and, in the event of a bankruptcy proceeding by Stant, Northstar's agreement that it would:

(i)     not object to, contest or oppose (or cause or support any other person in objecting to, contesting or opposing), and waives any right to object to, contest or oppose, any sale, transfer or other disposition of all or any part of the [Pre-Petition] Collateral free and clear of liens or other claims of [Northstar] under Section 363 of the Bankruptcy Code or any other law applicable to such proceeding if the Senior Lenders have consented to or not otherwise opposed such sale, transfer or disposition;

(ii)     (A) not challenge, contest or otherwise object to (or support any other person in challenging, contesting or otherwise objecting to) in any manner (1) any use of cash collateral or debtor-in-possession financing under Sections 363 or 364 of the Bankruptcy Code or otherwise that is consented to or provided by any Senior Lender, (2) any request by any Senior Lender for "adequate protection" under Sections 361, 362, 363 or 364 of the Bankruptcy Code (or its equivalent) or (3) any objection by any Senior [Prepetition] Lender to any motion, relief, action or proceeding based on any Senior Lender's claim of lack of adequate protection; provided, however, that [Northstar] may retain its [l]ien on its [Pre-Petition] Collateral that was otherwise permitted by [the Intercreditor Agreement] with the same priority as existed prior to

the commencement of such proceeding, but subject in all respects to the terms of [the Intercreditor Agreement], and (B) subordinate its [l]iens in the [Pre-Petition] Collateral to the [l]iens securing such DIP [f]inancing (and all [o]bligations relating thereto), to the extent the [l]iens securing the Senior [Pre-Petition Loans] are subordinated to or pari passu with such DIP [f]inancing;

(iii)    not assert (or cause or support any other Person in asserting) in any manner any right it may have to adequate protection of its interest in any [Pre-Petition] Collateral or to post-petition interest, absent written consent or direction of Senior Agent on behalf of the Senior Lenders....

Intercreditor Agreement Sections 2.4(b)(i), (ii) and (iii).

### Relief Requested

15.    By this Motion, the Debtors seek the entry of the Interim Order and the Final Order regarding the relief requested herein. Such Interim and Final Orders, *inter alia*, will authorize the Debtors to (i) use Cash Collateral, and (ii) obtain post-petition secured financing in an aggregate amount at any one time outstanding of up to Eleven Million Dollars ($11,000,000.00), in accordance with the terms and conditions set forth in the proposed Post-Petition Amendment among the Debtors, the Agent and the Lenders.

16.    This Motion also seeks approval of the Post-Petition Amendment, the material terms of which are described above. In summary, the principal elements of the Post-Petition Amendment are as follows:

(a)    The Lenders will lend the Debtors funds in an amount up to Eleven Million Dollars ($11,000,000.00) in the aggregate at any time outstanding with such amounts to be used to fund, as necessary, the continuance of their businesses, solely in compliance with the Budget.

(b)    Pursuant to Section 364(d)(l) of the Bankruptcy Code, the liens and security interests granted to the Agent for the benefit of the Lenders by the Debtors pursuant to the Post-Petition Amendment will constitute first priority, and valid liens upon and security interests in the Collateral and are not and will not be subject to any claims, set-offs, or defenses by the Debtors subject to the Carve-Out Expenses and Permitted Priority Liens.

(c)    The Post-Petition Amendment also contains representations, warranties and events of default customarily found in credit agreements of this nature, as described above and as set forth therein.

## Basis for Relief Requested

17.    Authorization of the use of Cash Collateral and approval of the Post-Petition Amendment will provide the Debtors with immediate and ongoing access to cash and borrowing availability to pay their current and ongoing operating expenses, including postpetition wages and salaries and utility and vendor costs.   Unless the expenses of operations are paid in the interim, the Debtors will be forced to immediately cease operations, which would likely (a) result in irreparable harm to the business, (b) deplete going concern value and quash the opportunity for a sale, and (c) jeopardize the Debtors' ability to maximize the value of their estates. Moreover, the Debtors will be able to continue to satisfy their vendors, service their customers, pay their employees, and operate the business in an orderly and reasonable manner to preserve and enhance the value of their estates for the benefit of all stakeholders.   Accordingly, the timely approval of the relief requested herein is imperative.

## A.    The Post-Petition Financing

18.    Even with the success in reducing fixed costs, the Debtors have not been able to generate sufficient cash flows to meet their continuing obligations.  In light of continued global economic instability, including the unique financial difficulties currently faced by the "Big Three" United States automakers, the Boards of Directors, in the exercise of their reasonable business judgment (and after extensive negotiations with their lenders, customers and the creditor constituencies described above, and discussions with the Debtors' professionals), ultimately determined that the most effective way to maximize the value of the Debtors' estates for the benefit of their creditors is to seek protection under the Bankruptcy Code in order to complete a prompt and orderly liquidation of substantially all of their assets through a sale of the

company as a going concern. The Debtors believe that proceeding under chapter 11 will maximize the value of such assets and will reduce potential risks, contingencies and uncertainties during the chapter 11 process.

19.     In order to operate during these Chapter 11 Cases and thereby have an opportunity to complete the orderly sale of their assets, the Debtors will need additional financing, almost immediately. Without postpetition financing, the Debtors would be unable to continue to operate, and would have to shut down and liquidate. This would destroy the Debtors' businesses and impose harm on the Debtors' employees, customers, trade venders and other creditors.

20.     Prior to the Petition Date, the Debtors retained Ladenburg Thalman & Co., Inc. ("**Ladenburg**"), an investment banking firm, to, *inter alia*, identify and contact potentially interested financial parties in an effort to procure necessary postpetition financing for the Debtors. As part of their search, Ladenburg contacted twenty-eight (28) potential lenders. Notwithstanding Ladenburg's efforts, the Debtors have been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b), in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1), or secured by a junior lien on the property of the estate pursuant to section 364(c)(3).

21.     In order to prevent the harm that would result from an abrupt halt in the Debtors' operations, the Lenders have agreed to provide the Debtors with postpetition financing on the terms described in this Motion, and more particularly, in the Post-Petition Amendment.

22.     The Lenders are willing to provide the postpetition financing to facilitate the sale and a structured liquidation in chapter 11. The Debtors have not been able to obtain postpetition

financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein. Thus, undertaking this financing is consistent with the Debtors' obligation to seek to maximize the value of their assets for the benefit of creditors.

23.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, the Bankruptcy Court may authorize the debtor to obtain credit or incur debt (a) with priority over any and all administrative expenses, as specified in Section 503(b) or 507(a)(2) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien. *See* 11 U.S.C. § 364(c). Section 364(d) provides that, in appropriate circumstances, a debtor may incur debt secured by a senior, or "priming" lien. The Debtors propose to obtain the financing set forth in the Post-Petition Amendment by providing the Lenders with, *inter alia,* a priming lien on all of the Debtors' assets, as well as a superpriority claim, and junior liens in certain assets, pursuant to section 364(c)(1), (2), (3) and section 364(d) of the Bankruptcy Code.

24.     The Lenders have consented to the approval of the Post-Petition Amendment, including, *inter alia*, the priming of the liens granted to the Prepetition Agent on behalf of the Lenders. Accordingly, pursuant to the Intercreditor Agreement, Northstar is prohibited from challenging, contesting or otherwise objecting to the debtor-in-possession financing. See Intercreditor Agreement Section 2.4(b)(ii).

25.     Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment. *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y.

1990) ("cases consistently reflect that the court's discretion under Section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"). *See also In re Funding Systems Asset Management Corp.*, 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985). Business decisions are made in the board room, not the courtroom. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court"); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank*, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

26.     The Debtors have exercised sound business judgment in determining that a postpetition credit facility is appropriate and have satisfied the legal prerequisites to enter into the financing pursuant to the terms of the Post-Petition Amendment. The terms of the Post-Petition Amendment are fair and reasonable and are in the best interests of the Debtors' estates. The delays, cost and expense of placing this loan with a new lender, assuming one could be found, would be detrimental to the estates and ultimately diminish creditor recoveries. Accordingly, the Debtors should be granted authority to enter into the Post-Petition Amendment and borrow funds from the Lenders on the secured, administrative super-priority basis provided for therein and in the Interim and Final Orders, pursuant to section 364(d) of the Bankruptcy

Code, and take the other actions contemplated by the Post-Petition Amendment and the Interim Order and Final Order as requested herein.

27.     Furthermore, Section 364(d) does not require that a debtor seek alternative financing from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain financing without the need to grant a senior lien. *See Bray v. Shenandoah Fed. Savings & Loan Ass'n (In re Snowshoe Co.),* 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee was not required to seek credit from every possible lender and the information provided regarding unsuccessful contact with financial institutions in the geographic area was sufficient to establish that credit was not available without granting a senior lien); *In re 495 Central Park Ave. Corp.,* 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure financing from various sources, explaining that "most banks lend money only in return for a senior secured position"); *In re Aqua Assocs.,* 123 B.R. 192, 197 (Bankr. E.D. Pa. 1991) (debtor adequately established that some degree of priming of loan was necessary if debtor was to obtain funding).

28.     Substantially all of the Debtors' assets are encumbered and the Debtors have been unable to procure the required funding absent granting the proposed priming liens, superpriority claims, and liens. The Debtors submit that the circumstances of these cases require the Debtors to obtain financing pursuant to section 364(c) and section 364(d) of the Bankruptcy Code and, accordingly, the Post-Petition Amendment reflects the exercise of the Debtors' sound business judgment.

**B.      The Post-Petition Amendment Terms are Fair, Reasonable, and Appropriate**

29.     The proposed terms of the Post-Petition Amendment are fair, reasonable, and adequate under the circumstances.  First and foremost, the Debtors have made a concerted, good-

faith effort to obtain credit on the most favorable terms that are available. As discussed above, prior to the Petition Date, the Debtors began exploration of various sources of postpetition financing, including financing from third parties. Despite the best efforts of the Debtors and Ladenburg, no other lender was willing to provide an adequate stand alone financing facility. Against this backdrop, the Debtors carefully evaluated the proposed financing structure from the Lenders, engaged in negotiations with the Lenders regarding the proposed terms, worked with their attorneys to obtain the best possible terms from the Lenders and, eventually, agreed to the Lenders' proposal as the proposal best suited to the Debtors' needs. In addition, the terms and conditions of the Post-Petition Amendment were negotiated by the parties in good faith, and were instituted for the purpose of enabling the Debtors to meet ongoing operational expenses while in chapter 11 and implement an orderly liquidation of their remaining assets for the benefit of creditors.

30.     To further illustrate that the terms are fair, reasonable and adequate, the proposed Post-Petition Amendment and the Interim Order provide that the security interests and administrative expense claims granted to the Agent and the Lenders are subject to the Carve-Out. In *In re Ames Dept. Stores*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990), the court found that such "carve-outs" are not only reasonable, but necessary to ensure that official committees and the debtors' estate will be assured of the assistance of counsel. *Id.* at 40.

## C.     Proposed Postpetition Use of Cash Collateral

31.     The Lenders assert and the Debtors agree that all or virtually all of the cash generated in the ordinary course of the Debtors' business constitutes the Lenders' Cash Collateral. The Debtors' use of the Cash Collateral is necessary to maintain the value of their bankruptcy estates. Absent the use of Cash Collateral, the Debtors will be unable to operate the

business in a manner necessary to maintain and maximize the value of their assets and will suffer immediate and irreparable harm.

32.     After extensive negotiations, the Agent and the Lenders have agreed to the Debtors' use of Cash Collateral in accordance with the terms and conditions more fully set forth in the Interim Order.  As adequate protection for the use of the Cash Collateral, to the extent of any diminution in the value of the Cash Collateral, the Debtors will be providing the Agent and the Lenders with, *inter alia*, superpriority administrative claims and replacement liens on all of the Debtors' assets, subject and subordinate to the liens being granted pursuant the Post-Petition Amendment, and the Carve Out (as such term is defined below).

33.     It is essential to the Debtors' efforts to maintain the value of the business that they obtain, in addition to the funds under the Post-Petition Amendment, the authority to use Cash Collateral.  The Cash Collateral will only be used to pay for expenses that are set forth in the Debtors' 11-week Budget (the "**Budget**"), attached hereto as **Exhibit "C"** and in accordance with the Interim Order and the Final Order.  The Budget enumerates expenses including, but not limited to, employee payroll and other benefits, rent, corporate overhead, inventory purchases, professional fees, United States Trustee fees, and other expenses related to operating the business and the bankruptcy cases (collectively, "**Budget Expenses**").  The Debtors have prepared the Budget that shows the Debtors' projected expenditures during the 11-week period from the Petition Date to the week of October 10, 2009 (the "**Budget Period**") and estimates the period in which such cash expenditures will either need to be paid or accrue.  The Budget may be updated throughout the 11-week period upon the consent of the Agent.

34.     The reasons supporting the Debtors' need to use Cash Collateral during the course of the Debtors' Cases are compelling.  As the Debtors have extremely limited funds, use of Cash

Collateral is required to fund the day-to-day operating expenses of the business, including payment for employees, suppliers, insurance premiums, taxes, customer programs, and various other operating and bankruptcy related expenses. Unless this Court authorizes use of the Cash Collateral, the Debtors will be unable to pay for services and expenses necessary to preserve and maximize the value of the Debtors' business and their bankruptcy estates.

35.     Indeed, absent sufficient funds to support the business, the value of the Debtors' assets will quickly erode. Therefore, authorization to use Cash Collateral as provided in the Interim Order and Final Order is in the best interests of the Debtors' estates and creditors.

36.     The Lenders have consented to the approval of the Debtors' use of Cash Collateral. Accordingly, pursuant to the Intercreditor Agreement, Northstar is prohibited from challenging, contesting or otherwise objecting to the Debtors' use of Cash Collateral. See Intercreditor Agreement, Section 2.4(b)(ii).

## C.     The Proposed Adequate Protection Should be Authorized

37.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used…or proposed to be used…by [a debtor in possession], the court, with or without a hearing, shall prohibit or condition such use…as is necessary to provide adequate protection of such interest." See 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. See In re O'Connor, 808 F.2d 1393, 1396-97 (10th Cir. 1987); In re Martin, 761 F.2d, 472, 474 (8th Cir. 1985); Shaw Indus. v. First Nat'l Bank (In re Shaw Indus., Inc.), 300 B.R. 861, 865-66 (Bankr. W.D. Pa. 2003) (quoting In re Sharon Steel Corp., 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993)). The focus of the

requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swsedeland Bev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("the whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (citation omitted).

38.    Nevertheless, adequate protection must be determined on a case-by-base basis, in light of the particular facts and circumstances presented, the focus being that which is required to protect a secured creditor from diminution in the value of its interest in the particular collateral during the use period. *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990); *Delbridge . Production Credit Assoc. and Federal Land Bank*, 104 B.R. 824, 827 (E.D. Mich. 1989); *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

39.    The Lenders have agreed to (i) the Debtors' use of Cash Collateral, and (ii) the Agent, on behalf of the Lenders, obtaining the primary lien on the Debtors' assets (including the Pre-Petition Collateral), in consideration of the adequate protection provided under the Interim Order and the Final Order and the other terms thereof.  Accordingly, the adequate protection proposed herein to protect the Lenders' interest in the Pre-Petition Collateral is fair and reasonable and sufficient to satisfy the requirements of Sections 363(c)(2) and (e) of the Bankruptcy Code.

**D.    The Automatic Stay Should Be Modified on a Limited Basis**

40.    The relief requested herein contemplates a modification of the automatic stay to permit the Debtors to (a) grant the security interests, liens, and superpriority claims described above with respect to the Agent and the Lenders and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (b) permit the Agent and

the Lenders to exercise, all rights and remedies under the Post-Petition Amendment, the Interim Order, and the Final Order; and (c) implement the terms of the Post-Petition Amendments, the Interim Order, and the Final Order.

41.     Stay modifications of this kind are ordinary and standard features of postpetition debtor financing facilities and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

**E.      Interim Approval Should Be Granted**

42.     Bankruptcy Rule 4001 permits a court to approve a debtor's request for financing and use of cash collateral on an interim basis following the filing of a motion requesting authorization to use cash collateral and financing, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001. In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g, Simasko*, 47 B.R. at 449; *see also Ames*, 115 B.R. at 38.

43.     Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtors request that the Bankruptcy Court conduct an expedited preliminary hearing on this Motion and (a) authorize the Debtors to borrow up to $7,500,000 at any one time outstanding under the Post-Petition Amendment, on an interim basis, pending entry of the Final Order, in order to maintain and finance the ongoing operations of the Debtors, and avoid immediate and irreparable harm to the Debtors' estates and all parties-in-interest, (b) authorize the Debtors to use Cash Collateral on an interim basis, pending entry of the Final Order, in order to maintain and finance the ongoing operations of the Debtors, and avoid immediate and irreparable harm to the Debtors' estates and all parties-in-interest; and (c) schedule a hearing to consider entry of the Final Order.

44.     The Debtors have an urgent and immediate need for cash to continue to operate. Currently, the Debtors do not have sufficient funds with which to operate the business on an ongoing basis. Absent authorization from the Bankruptcy Court to obtain secured credit, and obtain use of Cash Collateral, as requested, on an interim basis pending a final hearing on the Motion, the Debtors will be immediately and irreparably harmed. The availability of interim loans under the Post-Petition Amendment and the use of Cash Collateral will provide necessary assurance to the Debtors' vendors, employees, and customers of their ability to meet their near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a significant negative impact on the value of the business, to the detriment of all parties-in-interest. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtors.

45.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

46.     To successfully implement the foregoing the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) with respect of the Interim Order and a waiver of the ten-day stay under Bankruptcy Rule 6004(h).

**Notice**

47.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Agent; (c) counsel to Northstar; (d) creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (e) the Office of the United States Attorney General for the District of Delaware; (f) the Internal Revenue Service; and (g) the Securities and

Exchange Commission. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion in accordance with the Local Rules. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

48.     No previous application for the relief sought herein has been made to this or any other court.

49.     The Debtors request that this Court retain jurisdiction to hear and determine all matters arising from or related to this Motion.

50.     Except as specifically set forth herein or in the Interim Order or Final Order, nothing in this Motion should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claims, or (c) an approval or assumption of any agreement, contract or lease, pursuant to Section 365 of the Bankruptcy Code.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and that it grant the Debtors such other and further relief as is just and proper.

Dated: July 27, 2009

GREENBERG TRAURIG, LLP

Scott D. Cousins (DE Bar No. 3079)
Sandra G. Selzer (DE Bar No. 4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: cousinss@gtlaw.com
      selzers@gtlaw.com

-and-

Nancy A. Mitchell
Alan J. Brody
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com
      mitchelln@gtlaw.com
      brodya@gtlaw.com

Proposed Counsel for the Debtors
   and Debtors-in-Possession