UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STANT PARENT CORP., *et al.*,[1] | Case No.09-12647 (BLS) (Jointly Administered) |
| Debtors. | RE: Docket 17 |

## FINAL ORDER (I) AUTHORIZING SECURED POST-PETITION FINANCING, (II) GRANTING SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (III) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL; (IV) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF

Upon the emergency motion (the "Motion") dated July 27, 2009 of the above-captioned

debtors and debtors in possession (each, individually a "Debtor" and, collectively, the "Debtors")

(a) seeking this Court's authorization pursuant to Sections 364(c)(1), 364(c)(2), 364(c)(3) and

364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the

"Bankruptcy Code") and Rules 2002, 4001(b), (c) and (d) and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for the Debtors, inter alia, (i) to obtain secured

post-petition loans, advances and other accommodations pursuant to the Pre-Petition Agreements

(defined below), as amended hereby, and the Post-Petition Amendment (defined below), up to an

aggregate principal amount not to exceed $11,000,000 (the "Post-Petition Financing") from

GMAC Commercial Finance LLC, as a lender and agent (in such capacity, the "Agent") for the

lenders (collectively, the "Lenders")[2], (ii) granting the Lenders, pursuant to Bankruptcy Code

---

[1] The Debtors are the following entities: Stant Parent Corp., Stant Holding Corp., Stant Corporation, Stant Manufacturing, Inc., Standard-Thomson Corporation and Thomson International Corporation.

[2] Pursuant to that certain Participation Agreement dated as of July 27, 2009 (the "Participation Agreement"), H.I.G. Capital Partners IV, L.P. ("HIG"), purchased a $6,000,000 participation in the Post-Petition Financing. HIG Stant IV, LLC, an affiliate of HIG, is the majority shareholder of Stant Parent Corp. None of the HIG entities are affiliated with the Agent or the Lenders.

§§ 364(c) and 364(d), security interests in all of the Debtors' presently owned and after-acquired property and Pre-Petition Collateral (as defined below) and (iii) granting the Lenders, pursuant to Bankruptcy Code § 364(c)(1), priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than in respect of the Carve-Out (as defined below); (b) seeking this Court's authorization, pursuant to Bankruptcy Code § 363(c), to use Cash Collateral (as defined below) and, pursuant to Bankruptcy Code §§ 361, 363(e) and 364(d), to provide adequate protection to the Lenders with respect to any diminution in the value of the Lenders' interest in the Pre-Petition Collateral resulting from the priming liens and security interests to be granted herein pursuant to Bankruptcy Code § 364(d) to secure the Post-Petition Financing, the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than Cash Collateral) and the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a); and (c) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order authorizing on a final basis, inter alia, the Post-Petition Financing and the use of Cash Collateral (the "Final Order"); an interim hearing (the "Interim Hearing") having been held before this Court, at the conclusion of which the Court entered that certain *Interim Order (I) Authorizing Secured Post-Petition Financing, (Ii) Granting Senior Liens And Superpriority Administrative Expense Status; (Iii) Authorizing The Debtors' Use Of Cash Collateral; (Iv) Granting Limited Relief From The Automatic Stay; (V) Scheduling A Final Hearing And (Vi) Granting Related Relief* (the "Interim Order") [Docket No. 52]; due and sufficient notice of the Motion, the Interim Order and the Final Hearing having been given; and upon the entire record made at the Interim Hearing and the Final Hearing, and this Court having found good and sufficient cause appearing therefore,

THE DEBTORS AND THE LENDERS STIPULATE TO EACH OF PARAGRAPHS A THROUGH L BELOW, AND BASED UPON SUCH STIPULATION, THE COURT FINDS AND CONCLUDES THAT:

A.      On July 27, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are continuing in possession of their property, and operating and managing their businesses pursuant to Bankruptcy Code §§ 1107(a) and 1108.

B.      This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      Without prejudice to the rights of any other party (but subject to the limitations thereon described in ¶11 below), the Debtors acknowledge, stipulate and confirm the following:

      (a)      On or about June 18, 2008, Stant Holding Corp. ("Stant Holding"), Stant Corporation ("Stant"), Standard-Thomson Corporation ("STC"), Thomson International Corporation ("Thomson"), Stant Manufacturing, Inc. ("Stant Manufacturing"); and together with Stant Holding, Stant, STC and Thomson, individually, each a "Borrower," and collectively, the ("Borrowers"), Stant Parent Corp., as guarantor, the Agent and the Lenders entered into that certain Loan and Security Agreement, a copy of which is attached to the Motion as Exhibit "D" (as the same may have been amended, supplemented or otherwise modified or restated from time to the Petition Date, the "Loan Agreement" and collectively with all prepetition documents executed in connection

3

therewith, the "Pre-Petition Agreements")[3] pursuant to which, *inter alia*, the Lenders agreed to make certain loans and financial accommodations to the Borrowers in the aggregate principal amount of up to $70,000,000 comprised of a revolving credit facility in the principal amount of up to $30,000,000 (including a swingline loan), and a term loan facility in the principal amount of $40,000,000, which loans are secured by senior liens on, and security interests in, substantially all of the Debtors' assets, including, without limitation, all (1) Accounts; (2) Chattel Paper; (3) Commercial Tort Claims; (4) (i) all Deposit Accounts of the Loan Parties and (ii) all cash and other monies and property of any Loan Party in the possession of or under the control of the Agent or any Lender; (5) Documents; (6) Equipment; (7) Fixtures; (8) General Intangibles (including Intellectual Property); (9) Goods; (10) Instruments; (11) Inventory; (12) Investment Property; (13) Letter-of-Credit Rights and Supporting Obligations; (14) other personal property; (15) Mortgaged Property; (16) all books, records, ledger cards, files, correspondence, computer programs, tapes, disks and related data processing software that at any time evidence or contain information relating to any of the property described above or are otherwise necessary or helpful in the collection thereof or realization thereon; (17) Proceeds and products of all or any of the property described above; and (18) the equity interests pledged to the Agent pursuant to the Pledge Agreements, to the extent set forth in the Pledge Agreements (collectively, including Cash Collateral (as defined below), the "Pre-Petition Collateral");

(b)     The Debtors, for themselves but not on behalf of their estates, acknowledge and agree that they are truly and justly indebted and liable to the Agent and

---

[3] Capitalized terms not otherwise defined herein shall have the definitions set forth in the Pre-Petition Agreements.

Lenders without defense, counterclaim or offset of any kind in respect of loans made pursuant to the Pre-Petition Agreements, and that as of the Petition Date, such amount equaled approximately $62,051,487.61 (inclusive of interest, facility fees, costs, expenses, swap exposure and indemnities), plus (i) outstanding letter of credit exposure, plus (ii) other fees, costs, expenses and indemnities as provided for in the Pre-Petition Agreements (collectively, the "Pre-Petition Indebtedness");

(c)     The Agent and the Lenders' security interests in, and liens on, the Pre-Petition Collateral were (i) properly perfected and are valid and enforceable first priority liens on and security interests in the Pre-Petition Collateral, subject to the Prior Permitted Liens (as defined below), and (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law.    The Debtors further acknowledge that their cash constitutes proceeds of the Pre-Petition Collateral and, therefore, is cash collateral of the Lenders within the meaning of Bankruptcy Code § 363(a) ("Cash Collateral").  The Lenders are entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of their interest in the Pre-Petition Collateral, including for the use of Cash Collateral and the use, sale or lease of the Pre-Petition Collateral other than Cash Collateral; and

(d)     The Debtors, for themselves but not on behalf of their estates, acknowledge and agree that, as of the Petition Date: (a) the Pre-Petition Agreements are valid and binding agreements and obligations of the Debtors, (b) the first-priority security interests in and liens upon the Pre-Petition Collateral of the Agent and Lenders are valid, perfected, enforceable and non-avoidable, (c) the Agent and Lenders' pre-petition claims against the Debtors and their respective estates are allowed and valid, enforceable and

5

non-avoidable in the amount of the Pre-Petition Indebtedness, (d) the Debtors do not possess and may not assert any claim, counterclaim, setoff or defense of any kind or nature which would in any way affect the validity, enforceability and non-avoidability of the Pre-Petition Indebtedness and the Agent and Lenders' security interests in and liens upon the Pre-Petition Collateral or reduce or affect the obligation of the Debtors to pay the Pre-Petition Indebtedness, and (e) the Agent, Lenders and their respective agents, attorneys and employees are released and discharged from all claims and causes of action arising out of the Pre-Petition Agreements or their relationship with the Debtors prior to the entry of this Order.

D.     Various Defaults and Events of Default have occurred and are continuing under the Pre-Petition Agreements, and as a result, the Lenders have the right, subject to the Pre-Petition Agreements, to accelerate the Pre-Petition Indebtedness, foreclose on the Pre-Petition Collateral (with relief from the automatic stay), and cease advancing funds pursuant to the Loan Agreement.

E.     Absent the Post-Petition Financing and the use of the Cash Collateral, the Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business, pay the expenses of administration of these Cases or maintain their properties and satisfy their debts as they come due.  The Debtors' ability to maintain business relationships with vendors, suppliers and customers, to pay their employees and otherwise finance operations, is essential to the Debtors' continued viability.  In addition, the Debtors' need for financing is immediate.  In the absence of the Post-Petition Financing and the use of the Cash Collateral, the continued operation of the Debtors' businesses would not be possible, causing serious and irreparable harm to the Debtors and their estates.

F.     As further described herein and in the Post-Petition Amendment, the Post-Petition Indebtedness will consist of loans to be made under a newly established "sub-limit" to the revolving facility in existence as of the Petition Date. Other than borrowings under such sub-limit, there will no post-petition advances under the term loan and revolving facility in existence as of the Petition Date.

G.     Given the Debtors' current financial condition, financing arrangements and capital structure, the Debtors cannot obtain unsecured credit allowable under Bankruptcy Code §503(b)(1) as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtors (i) granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), (ii) securing, pursuant to Bankruptcy Code §§ 364(c) and (d), such indebtedness and obligations with security interests in and liens on substantially all (if not all) of the Debtor's personal property, real property and the Pre-Petition Collateral, and (iii) providing for adequate protection of the Lenders' interests.

H.     Notice of the Final Hearing and the relief requested in the Motion was given to (i) the Office of the United States Trustee, (ii) counsel to the Lenders, (iii) the creditors holding the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis), (iv) counsel to Northstar (defined below), (v) the Office of the United States Trustee for the District of Delaware, (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission, (viii) counsel to HIG, (ix) counsel to the Committee (defined herein) and (x) all other known parties asserting a lien on, or security interest in, the Debtors' assets or property (collectively, the "Notice Parties"). Notice of the Final Hearing and the relief requested has been given pursuant to Bankruptcy Code §§ 105, 362(d), 363(b) and 364 (d) and Bankruptcy Rules 2002 and 4001.

CHICAGO/#1966979.4

I.     Based on the record presented to the Court by the Debtors at the Interim Hearing and Final Hearing, the Post-Petition Financing has been negotiated in good faith and at arm's length between the Debtors and the Lenders, and any credit extended, and loans made to the Debtors as part of the Post-Petition Financing shall be deemed to have been extended, issued or made, as the case may be, in good faith by the Lenders as required by, and within the meaning of, Bankruptcy Code § 364(e).

J.     Based on the record presented to the Court by the Debtors and the Lenders at the Interim Hearing and Final Hearing, the terms of the Post-Petition Financing appear to be fair and reasonable, are ordinary and appropriate for secured financing under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

K.     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2). The permission granted herein to enter into the Post-Petition Financing and obtain funds thereunder is necessary and will allow the Debtors to commence an orderly sale process designed to maximize the value of their assets ("Sale Process"). This Court concludes that entry of this Order is in the best interest of the Debtors' estates and creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to sustain the operation of their businesses throughout the Sale Process.

L.     On August 6, 2009, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to serve in these Chapter 11 Cases. The Committee, through counsel, appeared and participated at the Final Hearing.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AND AGREED AMONG THE PARTIES HERETO THAT:

1. The Motion is granted, subject to the terms and conditions set forth in this Order.

## Post-Petition Loans

2. The Debtors are hereby authorized to obtain the Post-Petition Financing, use Cash Collateral, and additionally to borrow money and seek other financial accommodations from the Lenders after the Petition Date pursuant to the terms and conditions of (a) this Order (including the Budget (defined below)), (b) the Pre-Petition Agreements, as modified hereby, and (c) the Post-Petition Amendment to Loan and Security Agreement[4], substantially in the form attached hereto as Exhibit A ("Post-Petition Amendment") (collectively, the "Operative Documents"). The Debtors are authorized to use the proceeds of any such loans ("Loans") made under the Post-Petition Financing, to use Cash Collateral and other Collateral (as defined below), as provided and limited by the Budget, for operation of the Debtors' businesses and the administration of these Chapter 11 Cases (all such Loans shall constitute, the "Post-Petition Indebtedness"), provided, that (i) the proposed Loans or use of Cash Collateral or other Collateral is consistent with the terms of the Operative Documents and will only be used to pay, when due (or, in the case of certain professional fees, when allowed by the Court), the expenses set forth in the Budget (subject to the variances set forth in paragraph 5 hereof), and (ii) any requested Post-Petition Financing is necessary only after the use of available Cash Collateral.

3. During the term of this Order, the terms of the Pre-Petition Agreements shall continue in full force and effect with respect to the loans and other advances under the Post-Petition Financing, except as otherwise modified hereby or by the Post-Petition Amendment; provided, however, other than the DIP Revolving Overadvances (as that term is defined in the

---

[4] The Post-Petition Amendment attached hereto varies slightly from the copy attached to the Interim Order. The attached document amended the definition of "Requisite Lenders" and changed the dollar amounts listed on Annex "A" thereto.

Post-Petition Amendment), the Lenders shall not be required to make any other Advance to, or for the benefit of, the Debtors.

4.     Attached hereto as <u>Exhibit B</u> is a revised eleven (11) week Budget (the "<u>Budget</u>") for the period from the Petition Date through and including the week of October 10, 2009, which was prepared by the Debtors and consented to by the Requisite Lenders. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses which Debtors expect to incur during the Term (as defined below). The Debtors are authorized to use the proceeds of the Post-Petition Indebtedness and the Collateral to pay (a) the items described in the Budget, subject to the terms and conditions set forth in the Operative Documents (subject to the variances set forth in this ¶4); and (b) interest, fees, costs, expenses and other charges payable by the Debtors to the Lenders under the Pre-Petition Agreements (as provided for herein) and the Post-Petition Amendment (regardless of whether such items are set forth in the Budget. Not later than the second (2nd) business day of each week, the Debtors shall provide the Lenders and the Committee with a variance report reflecting, on a line-item basis, the actual cash disbursements and collections for the preceding week and the percentage variance (the "<u>Variance Percent</u>") of such actual disbursements and collections from those reflected in the Budget for that period. Collections less than 90% of the amounts projected in the Budget (measured in any consecutive two (2) week period) or any disbursement by the Debtors other than for amounts set forth in the Budget or payments to be made to the Lenders in accordance with the terms of this Order, shall each constitute an Event of Default in accordance with the provisions of this Order unless the Requisite Lenders consents to those changes in writing; <u>provided</u>, <u>however</u>, the Debtors may make payments in excess of the total budgeted disbursements so long as the Variance Percent of the aggregate of all actual

10

disbursements for each week shall not exceed ten percent (10%) of the budgeted disbursements for that week (other than any professional fees for which no variance will be allowed); provided, further, however, to the extent that the full amount of any budgeted expense is not disbursed in a particular week, the Debtors may spend such unused amount in any subsequent week, subject to the terms and conditions of this Order. All disbursements by the Debtors shall be reviewed in advance of payment by the Lenders' restructuring consultant or any chief restructuring officer ("CRO") retained by the Debtors (the identity of such CRO to be reasonably acceptable to the Lenders) to ensure that such disbursements are in compliance with the Budget. The Budget may be modified by (a) the agreement of the Debtors and the Lenders, with two (2) days notice to the Committee; or (b) further Order of the Court. The Committee may seek expedited relief from this Court regarding any objections it may have to such modified Budget. Notwithstanding the variances permitted by this ¶4, at no time shall the Post-Petition Indebtedness exceed $11,000,000.

5.     As security for the Post-Petition Indebtedness, the Agent and the Lenders are granted, pursuant to Bankruptcy Code § 364(d), as of the Petition Date (without the necessity of the recordation of mortgages, security agreements, pledge agreements, assignments, control agreements, financing statements or otherwise), (a) valid, perfected, priming, first priority senior security interests in, and liens on all property and interests in property acquired by the Debtors and the Debtors' estates from and after the Petition Date, including, without limitation, the following (such property shall collectively be referred to as the "Post-Petition Collateral"): (i) accounts receivable, (ii) equipment, (iii) inventory and other goods, (iv) instruments and documents of title, (v) general intangibles (including, without limitation, all trademarks, patents, rights under licenses (whether as licensor or licensee) and other intellectual property, rights with

respect to insurance policies, state, federal and foreign tax and duty refunds, open purchase orders and customer lists), (vi) investment property, (vii) real estate owned by the Debtors, (viii) all monies, securities, cash, cash equivalents contained in deposit accounts maintained by the Debtors, (ix) all other property described in the Pre-Petition Agreements, (x) commercial tort claims, (xi) letter of credit rights, (xii) proceeds from the disposition of leases of real property, (xiii) all books and records (including electronic media) pertaining to the foregoing, (xiv) equity interests in any subsidiaries or affiliates, and (xv) the proceeds and products of all of the foregoing (including, without limitation, if approved at the conclusion of the Final Hearing, recoveries, claims and causes of action, and the proceeds of such recoveries, claims and causes of action arising under the avoidance provisions of Chapter 5 of the Bankruptcy Code limited to the amount of the Post-Petition Indebtedness); and (b) a valid, perfected and senior security interest in, and lien on, the Pre-Petition Collateral, junior only to the Permitted Lien Holders (defined below). (The Post-Petition Collateral and the Pre-Petition Collateral may hereinafter be referred to as the "Collateral"). Except to the extent expressly set forth in clause (b) of this paragraph, the liens granted pursuant to this Order and the Pre-Petition Agreements to the Agent and the Lenders to secure the Post-Petition Indebtedness shall not be subordinated to or made pari passu with any other lien or security interest. The provisions of any intercreditor agreements or subordination agreements which subordinate liens and security interests to the liens and security interests of the Agent or the Lenders or other indentures which subordinate any claims to the claims of the Agent or the Lenders (including, without limitation, (x) the Subordination and Intercreditor Agreement dated June 18, 2008, between the Agent and Northstar Mezzanine Partners V L.P. ("Northstar"); and (y) the Subordination Agreement dated as of June 18, 2008 by

and among the Agent, Tomkins Corporation and Northstar, shall be governed, in all respects, by Bankruptcy Code §510.

6.     In accordance with Bankruptcy Code §364(c)(1), the Post-Petition Indebtedness shall constitute claims with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 and 1114 (the "Superpriority Claims"), and shall at all times be senior to the rights of the Debtors and any subsequently appointed Chapter 7 or Chapter 11 trustee, and any of the Debtors' creditors.  Subject only to the Carve-Out, no cost or expense of administration under Bankruptcy Code §§ 105, 364(c)(1), 503(b), 507(b) or otherwise, including those resulting from the conversion of any of the Chapter 11 cases pursuant to Bankruptcy Code § 1112, shall be senior to, or *pari passu* with, the Superpriority Claims of the Lenders arising out of the Post-Petition Debt.

7.     As additional security for the Post-Petition Indebtedness, the Agent and Lenders are hereby granted as of the Petition Date (without the necessity of the recordation of mortgages, security agreements, pledge agreements, assignments, control agreements, financing statements or otherwise), (i) pursuant to Bankruptcy Code § 364(c)(2),  valid and perfected first priority senior security interests in, and liens on, all property of the Debtors' estates (other than the Collateral) that is not otherwise encumbered by a validly perfected security interest or lien senior to security interests and liens of the Lenders, and (ii) pursuant to Bankruptcy Code § 364(c)(3), second priority, junior perfected liens on and security interests in all property of the Debtors' estates, whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens (including the Collateral).

CHICAGO/#1966979.4

8.     The Debtors are authorized and directed to execute, deliver, perform and comply with the terms and covenants of the Operative Documents.  The Debtors, the Agent and the Lenders are further authorized to enter into (a) non-material amendments to the Pre-Petition Agreements and the Post-Petition Amendment, without further Order of this Court, provided that prior notice of such amendment is provided to the Committee, or (b) material amendments to the Pre-Petition Agreements and the Post-Petition Amendment, with the consent of the Committee or upon further Order of this Court.

### Pre-Petition Debt

9.     [Intentionally Deleted]

10.    Notwithstanding anything to the contrary set forth in the Stipulations hereto, the Agent and Lenders' security interests in and liens on the Pre-Petition Collateral do not have priority over valid, perfected and non-avoidable security interests in and liens on the Debtors' property existing on the Petition Date and having priority over the pre-petition security interests and liens of the Lenders, including, without limitation, claims asserted by creditors with a "purchase money security interest" (as that term is used §9-103 of the Uniform Commercial Code) (collectively, the "Permitted Lien Holders).  The security interests and liens granted by this Order to the Lenders shall, to the extent that any of the Permitted Lien Holders have a valid, enforceable, properly perfected, unavoidable prepetition lien and security interest in the Pre-Petition Collateral having priority over the pre-petition security interests and liens of the Agent and the Lenders, be a lien and security interest in the Pre-Petition Collateral, junior in priority only to such liens and security interests pursuant to Section 364(c)(3) of the Bankruptcy Code.

11.    The Stipulations set forth herein, the Pre-Petition Indebtedness and the Agent's and the Lenders' security interests and liens in the Pre-Petition Collateral are for all purposes binding upon all parties in interest, unless (a) a party in interest (other than the Debtors, the Loan

14

Parties and their respective direct and indirect shareholders) has commenced an adversary proceeding, on or before September 23, 2009 (as such date may be extended by the agreement of the parties without further Order of the Court or upon further Order of the Court, the "Initial Challenge Period"), with respect to (i) the extent, validity, perfection, priority and enforceability of the Agent and Lenders' liens on the Pre-Petition Collateral; or (ii) any matter concerning or relating to the Sale Process (including, without limitation, Agent and Lenders' agreement to the treatment proposed in the Asset Purchase Agreement ("APA") among the Debtors and Vapor Acquisition Corp.[5]), or, in the case of any other claims or causes of action asserted against the Agent or Lenders, including, without limitation, any claims arising from or related to the fees, charges, interest, commissions and expenses charged by the Agent and Lenders prior to the Petition Date pursuant to the terms of the Pre-Petition Agreements, on or before October 30, 2009 (as such date may be extended by the agreement of the parties without further Order of the Court or upon further Order of the Court, the "Subsequent Challenge Period"); provided, however, that in the event an auction of substantially all of the Debtors' assets is conducted prior to the expiration of the Initial Challenge Period, the Agent and the Lenders may, pursuant to Bankruptcy Code §363(k), "credit bid" the Pre-Petition Indebtedness and the Post-Petition Indebtedness at such sale in accordance with the procedures governing the Sale Process (it being understood that, if no adversary proceeding is filed prior to the expiration of the Initial Challenge Period, Agent and Lenders shall be deemed to have an "allowed claim" as that term is used in

---

[5] A copy of the APA was attached as Exhibit "D" to Motion Of The Debtors For Entry Of Orders: (A)(I) Approving Bid Procedures Relating To Sale Of The Debtors' Assets; (II) Scheduling A Hearing To Consider The Sale; (III) Approving The Form And Manner Of Notice Of Sale By Auction; (IV) Establishing Procedures For Noticing And Determining Cure Amounts; And (V) Granting Related Relief; and (B)(I) Approving Asset Purchase Agreement And Authorizing The Sale Of Certain Assets Of Debtors Outside The Ordinary Course Of Business; (II) Authorizing The Sale Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests; (III) Authorizing The Assumption And Sale And Assignment Of Certain Executory Contracts And Unexpired Leases; and (IV) Granting Related Relief [Docket No. 15].

Bankruptcy Code §363(k)); provided, further, however, that the Agent's and Lenders' right to credit bid prior to the expiration of the Initial Challenge Period shall not constitute a finding or determination with respect to the nature, extent, validity, priority or perfection of the Agents' or Lenders' prepetition security interests in or liens upon the Pre-Petition Collateral or, with respect to the Initial Challenge Period and the Subsequent Challenge Period, give rise to a defense, claim of mootness or right to offset in any adversary proceeding relating to the Pre-Petition Indebtedness; and (b) an Order is entered ruling in favor of the plaintiff in any such timely and properly filed adversary proceeding and as to which no stay has been entered and which has not been reversed, modified, vacated or overturned. If no such adversary proceeding is commenced prior to the expiration of the applicable Challenge Period, the Stipulations set forth herein, the Pre-Petition Indebtedness and the Agent's and the Lenders' security interests and liens in the Pre-Petition Collateral, shall be recognized as valid, binding and in full force and effect, not subject to defense, counterclaim, or offset of any kind, upon all parties in this proceeding, including, without limitation, the Committee, any chapter 7 or chapter 11 trustee (or any successor chapter 7 or chapter 11 trustee) appointed hereafter, allowed as a fully secured claim pursuant to §§506(a) and (b) of the Bankruptcy Code, without further Order of this Court and all parties in interest shall forever be barred from asserting any claims against the Lenders (or any one of them). The Committee is hereby granted standing to file and prosecute an adversary proceeding with respect to the Pre-Petition Indebtedness and the Pre-Petition Collateral, provided that such adversary proceeding is filed on or before the expiration of the applicable Challenge Period.

### Fees and Costs of Lenders and Professionals Retained by the Estate

12.     The Debtors are authorized and directed, without further Order of this Court, to promptly pay or reimburse Agent and the Lenders for all reasonable present and future fees,

CHICAGO/#1966979.4

costs and expenses paid or incurred by the Lenders (including, without limitation, any fees and expenses of the Lenders' counsel, auditors, appraisers, accountants, etc.) respecting the filing of the Chapter 11 Cases, including, without limitation, respecting the financing transactions contemplated by this Order (including, without limitation, reasonable fees, costs and expenses incurred prior to the Petition Date). The Lenders may continue to advance such reasonable costs, fees and expenses, and accordingly, all such reasonable costs, fees and expenses may be included as part of the principal amount of the Post-Petition Indebtedness; provided, however, Agent shall, on or before the 10th day of each month (commencing in September 2009), provide counsel to the Debtors, HIG and the Committee with a summary of such costs, fees and expenses (other than wire transfer fees, ACH transfer fees, check/deposit processing fees and the like) charged during the preceding month (or in the case of the September 2009 statement, from the Petition Date through August 31, 2009). Any of the foregoing parties may, within ten (10) days after the submittal of such summary, file an objection to such costs, fees and expenses, specifically detailing the basis of such objection. Notwithstanding the filing of such timely filed objection, the Debtors are authorized and directed to pay all fees, costs and expenses not subject to an objection, and Agent may seek entry of an Order from this Court approving the fees, costs and expenses which are subject to an objection. Subject to the Agent's discretion, the reimbursement contemplated hereby may be made by deducting such amounts from collections received by the Agent and Lenders or by adding such amounts to the Post-Petition Indebtedness.

13.     The liens and Superpriority Claims granted to the Agent and the Lenders pursuant to this Order and the Pre-Petition Agreements shall be subject and subordinate to the "Carve-Out." For purposes hereof, the "Carve Out" shall mean: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title

28 of the United States Code; and (ii) to the extent not otherwise payable from proceeds of Pre-Petition Collateral or Post-Petition Collateral, all allowed fees and expenses incurred in the Chapter 11 Cases by professionals retained by the Debtors or by the Committee (collectively, the "Retained Professionals") and individual Committee members in amount not to exceed the sum of (A) (1) all allowed fees and expenses incurred by the Retained Professionals prior to the occurrence of the Termination Date (defined below) (whether such fees and expenses are allowed before or after the Termination Date), and (2) individual Committee members accrued and unpaid expenses incurred prior to the occurrence of the Termination Date, in both cases not to exceed the amounts set forth in the Budget, plus (B) after the occurrence of the Termination Date, an amount not to exceed the lesser of the remaining availability under the Post-Petition Financing or $100,000 in the aggregate, less (C) (1) unapplied pre-petition retainers, and (2) the amounts allowed and paid to such Retained Professionals in these Chapter 11 Cases (including, without limitation, from the Professional Fee Account (defined below)). The Debtors are authorized and directed to deposit into an account maintained by Debtors' counsel an amount equal to the line items identified in the Budget under "Professional Expenses" (such account, the "Professional Fee Account"), which amounts are part of the Carve Out. Proceeds deposited into the Professional Fee Account shall be held subject to further Order of the Court, as to which all parties' rights are reserved, for purposes of paying allowed fees and costs of the Retained Professionals (which are part of the Carve Out) and pursuant to Order(s) of this Court. Any portion of the Professional Fee Account not used to pay allowed fees and costs of the Retained Professionals shall be held by the Debtor's counsel as collateral for the Post-Petition Indebtedness. The foregoing amounts may be paid from the Professional Fee Account, notwithstanding a Termination Event or the expiration of the Term.

18

14.     Except for the Carve-Out, no costs and expenses incurred in connection with the administration of the Debtor's chapter 11 case or any conversion of the Debtor's chapter 11 case pursuant to Bankruptcy Code §1112, or in any future proceedings or cases related hereto, whether incurred pursuant to Bankruptcy Code §726(b) or otherwise, shall be charged against the Pre-Petition Indebtedness, the Post-Petition Indebtedness, the Pre-Petition Collateral or the Post-Petition Collateral, pursuant to Bankruptcy Code §506(c) without the express written consent of the Lenders.  The Debtors, for themselves and their respective estates, shall be deemed to waive and may not assert, rights, claims and benefits under §552(b) of the Bankruptcy Code.

15.     Neither the Post-Petition Financing or the Carve Out may be used to (a) contest, hinder or delay the Lenders' enforcement of this Order or the Lenders' realization upon any of the Pre-Petition Collateral or Post-Petition Collateral (subject to the terms of this Order); (b) obtain or negotiate the terms of indebtedness other than the Post-Petition Indebtedness; (c) prosecute any claim or action, the primary purpose of which is to invalidate, set aside avoid or subordinate, in whole or in part, the Pre-Petition Indebtedness or the Post-Petition Indebtedness, Agent and Lenders' security interests in the Pre-Petition Collateral or Post-Petition Collateral; (d) object to, contest or raise any defense to the validity, perfection, priority, extent or enforceability of the Pre-Petition Indebtedness, the Post-Petition Indebtedness, Agent and Lenders' security interests in the Pre-Petition Collateral or Post-Petition Collateral; or (e) assert any claims, counterclaims, defenses or causes of action against the Agent or the Lenders. Notwithstanding anything herein to the contrary, no Loans, Collateral, Cash Collateral, or any portion of the Carve-Out may be used to prosecute, object to or contest in any manner, or raise any defenses to, the amount, validity, perfection, priority, extent or enforceability of the Pre-Petition Indebtedness or Post-Petition Indebtedness or the liens securing the Pre-Petition

19

Indebtedness or Post-Petition Indebtedness, or to prosecute or assert any claims or causes of action against the Lenders; provided, however, the Committee may use up to $40,000 of such amounts to investigate any claims or causes of action against the Agent and/or the Lenders respecting the Pre-Petition Indebtedness or Post-Petition Indebtedness or the liens securing the Pre-Petition Indebtedness or Post-Petition Indebtedness, or to prosecute or assert any claims or causes of action against the Agent and/or the Lenders. Nothing herein shall be construed as consent to the allowance of any fees and expenses of any professional retained in the Chapter 11 Cases, or shall affect the rights of the Lenders or any other interested party to object to the allowance and payment of such fees and expenses.

### Use of Cash Collateral; Adequate Protection

16. The Debtors' cash constitutes proceeds of the Pre-Petition Collateral and, therefore, is Cash Collateral of the Lenders within the meaning of Bankruptcy Code § 363(a). The Lenders are entitled, pursuant to Bankruptcy Code §§ 361 and 363(e), to adequate protection of their interest in the Pre-Petition Collateral, including for the use of Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than Cash Collateral), and for the imposition of the automatic stay to the extent not otherwise relieved herein. Accordingly, upon entry of this Order, the Debtors are hereby authorized to use Cash Collateral, provided the Lenders are granted adequate protection for any diminution in the value of the Pre-Petition Collateral resulting from (a) the liens and security interests granted by the Post-Petition Financing and this Order or otherwise pursuant to Bankruptcy Code § 364(d), (b) the Debtor's use of Cash Collateral pursuant to Bankruptcy Code § 363(c), (c) the use, sale or lease of the Lenders' collateral (other than Cash Collateral) pursuant to Bankruptcy Code § 363(c) and (d) the imposition of the automatic stay pursuant to Bankruptcy Code § 362(a). Accordingly, at all times prior to the Termination Date, the Debtors shall pay to the Agent (for the benefit of the

20

Lenders), when due, interest on that portion of the Pre-Petition Indebtedness consisting of Revolving Loans (regardless of whether such amounts appear in the Budget) at the applicable non-default rate in existence as of the Petition Date; provided, however, all post-petition interest paid to the Agent and Lenders in accordance with this ¶16 shall be subject to disgorgement if an Order is entered finding that Agent's or Lenders' liens on the Pre-Petition Collateral are invalid. Additionally, the Lenders shall be and hereby are granted:

(i) effective upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or otherwise, to the extent necessary to protect against any diminution in the value of the Pre-Petition Collateral, valid and perfected, replacement security interests in, and liens on (the "Replacement Liens"), all of the Debtors' right, title and interest in, to and under the Collateral, subject only to (x) the Liens granted pursuant to this Order, the Post-Petition Amendment and the Pre-Petition Agreements to the Lenders to secure the Post-Petition Indebtedness; (y) any Prior Permitted Liens (after giving effect to this Order) prior in interest and senior to the Liens granted to the Lenders pursuant to this Order and the Pre-Petition Agreements and (z) the Carve-Out and the statutory fees of the Office of the United States Trustee; and

(ii) pursuant to Bankruptcy Code § 364(c)(1), Superpriority Claims, to the extent necessary to protect against any diminution in the value of the Pre-Petition Collateral, junior only to (x) the Superpriority Claims granted pursuant to this Order to the Lenders in respect of the Post-Petition Financing; and (y) the Carve-Out and the statutory fees pursuant to 28 U.S.C.§1930.

17. Under the circumstances, the adequate protection provided herein is reasonable and sufficient to protect the interests of the Lenders; provided, however, that nothing herein contained shall affect or impair the Lenders' right to seek additional adequate protection of its interests.

### Events of Default; Remedies

18. If a Default or an Event of Default (as defined in any of the Operative Documents) occurs, the Lenders shall have the right to immediately suspend funding under Post-

Petition Financing and upon the Agent providing three (3) business days written notice to the Debtors, the office of the United States Trustee, and the Committee ("Default Notice"), the Agent and the Lenders may terminate the Post-Petition Financing facility (the date of any such termination, the "Termination Date") and declare the Loans to be immediately due and payable, and the automatic stay pursuant to Bankruptcy Code §362(a) shall be deemed lifted and modified, without further Order of the Court, to permit the Agent and the Lenders to exercise any and all of their rights and remedies under the Operative Documents; provided, however, the obligations and rights of the Agent, the Lenders and the Debtors with respect to all transactions which have occurred prior to the Termination Date (including the obligation to satisfy the Carve-Out) shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further, upon such termination, the Agent and the Lenders shall be deemed to have retained all of their rights and remedies, including, without limitation, as provided in the Operative Documents, applicable law and under the Bankruptcy Code. Upon the Debtors' receipt of a Default Notice, they shall immediately cease making any disbursements pursuant to the Budget or otherwise, except the Carve-Out, subject to further order of the Court after notice and a hearing. The Debtors' right to use Cash Collateral shall terminate automatically on the Termination Date; provided, however, that subsequent to the issuance of the Default Notice, the Debtors and the Committee may seek entry of an Order after notice and hearing, which may be conducted on an expedited basis subject only to the Court's calendar, allowing use of Cash Collateral and prohibiting the Agent and the Lenders from taking the actions contemplated in this paragraph; but the Court shall only grant such relief upon a finding that no Default or Event of Default exists.

CHICAGO/#1966979.4

19.  An Event of Default under this Order shall include: (i) the entry of an order dismissing any of these Chapter 11 Cases or converting any of these Chapter 11 Cases to Chapter 7 cases, (ii) the entry of an order appointing a Chapter 11 trustee in any of these Chapter 11 Cases, (iii) the entry of an order granting a superpriority claim or lien (other than a Prior Permitted Lien) equal or superior to the claims and liens granted to the Lender without the Lenders' prior written consent; (iv) the entry of an order staying, reversing, vacating or otherwise modifying the Post-Petition Financing under this Order (except as modified in a final order acceptable to the Agent and the Lenders) without the Lenders' prior written consent, (v) the entry of an order in any of these Chapter 11 Cases appointing an examiner having enlarged powers beyond those set forth under Bankruptcy Code § 1106(a)(3) and (4), (vi) an Event of Default or Default under the Pre-Petition Agreements (as modified by the Post-Petition Amendment) or the Post-Petition Amendment, (vii) any material representation or material warranty by the Debtors that is incorrect or misleading in any material respect when made, (viii) the occurrence of a post-petition, material adverse change in the operation of the Debtors' business (for the avoidance of doubt, any permitted variances from the Budget provided for in ¶4 of this Order shall not constitute a material adverse change in the operation of the Debtors' business), (ix) the entry of any order granting any relief from the automatic stay allowing a third party to proceed against any asset or assets of the Debtors having a value in excess of $25,000 (including, without limitation, the exercise of setoff rights), other than relating to assets subject to Prior Permitted Liens which if granted will not materially or adversely affect current operations, (x) the commencement of any adversary proceeding against the Agent and/or the Lenders relating to the Pre-Petition Indebtedness, the Post-Petition Indebtedness, the Pre-Petition Collateral or the Post-Petition Collateral, (xi) the entry of an order confirming a plan of reorganization in these

23

Chapter 11 Cases, unless such plan provides for payment in full, in cash, of all Pre-Petition Indebtedness and Post-Petition Indebtedness on or before the effective date of such the plan, (xii) the expenditures of the Debtors exceed, or the collections are less than (subject to the variances set forth in ¶4 hereof), the amounts set forth in the Budget, (xiii) any other failure of the Debtors to perform in any material respect any of their obligations pursuant to this Order, including, without limitation, failure to make payments to the Lenders contemplated in the Budget or in the Order; (xiv) the Debtors' filing, without the express written consent of the Lenders, of (1) a motion for the use of Cash Collateral, (2) a motion requesting authority to incur indebtedness either (A) having administrative expense priority equal or superior to the administrative expense priority granted to the Agent and the Lenders under this Order or (B) secured by a security interest or lien with priority equal or superior to the priority of the Lenders' security interests in or liens on the Pre-Petition Collateral and the Post-Petition Collateral; and (xv) the Debtor's failure to meet the following sale milestones, subject to the Court's schedule: (1) August 17, 2009: Bankruptcy Court's entry of an order approving bid procedures governing the Sale Process reasonably acceptable to the Lenders; (2) September 18, 2009: Bankruptcy Court approval of a sale(s) of substantially all of the Debtor's assets; and (3) September 30, 2009: closing of the sale(s) of the business, either as a single enterprise or on a plant-by-plant basis. The term "Default" herein means the occurrence of any event which except for the passage of time or the giving of notice or both would constitute an Event of Default (as defined in the Pre-Petition Agreements or in this Order).

## Miscellaneous Provisions

20.     The Lenders are hereby granted relief from the automatic stay as of the Petition Date to allow them to apply the proceeds of accounts receivable and other Collateral to the Post-Petition Indebtedness as follows:

24

a. first, to the payment of all costs, fees and expenses, including attorneys' fees of the Agent and the Lenders;

b. second, to the payment of all other Post-Petition Indebtedness other than principal, including all accrued and accruing interest; and

c. third, to the payment of the Post-Petition Indebtedness consisting of principal.

In the event that, after application of such amounts, the Post-Petition Indebtedness is reduced to zero, Agent shall retain such funds in a "suspense account" titled in the Agent's name and shall thereafter apply such funds to any subsequently made Loans in accordance with the terms hereof. In the event that, subsequent to the Termination Date, the Post-Petition Indebtedness is fully paid and there are funds in such suspense account, the funds shall be applied against the Pre-Petition Indebtedness.

21. In the event of a sale of substantially all of the Debtors' assets (pursuant to the Sale Process, liquidation or otherwise), the Post-Petition Indebtedness shall be paid, in full, prior to any distribution being made on account of the Pre-Petition Indebtedness.

22. If in the course of these Chapter 11 Cases, the Court grants liens or security interests to others pursuant to Bankruptcy Code § 364(d) or any other provision of the Bankruptcy Code, which liens or security interests are senior or equal to the liens or security interests of the Lenders in the Collateral (collectively, "Subsequent Liens"), any proceeds of loans or extensions of credit secured by such Subsequent Liens shall be applied first to payment of the Pre-Petition Indebtedness, including all interest, attorneys' fees, costs and expenses, and then to the Post-Petition Indebtedness. Agent and Lenders shall retain all liens and security interests on the Collateral until all of the Pre-Petition Indebtedness is paid in full,

CHICAGO/#1966979.4

23.     The Debtors shall continue its cash management system with the Lenders, which shall include a lockbox/blocked account agreement in a form and substance reasonably acceptable to the Lenders, pursuant to which the Lenders will have full dominion and control over Cash Collateral and the cash proceeds of the Collateral. The Debtors are authorized to establish and maintain an account into which adequate assurance deposits in favor of utility providers shall be deposited in accordance with 11 U.S.C. §366. Amounts deposited in such account shall be used solely to pay allowed claims of utility providers. Any amounts not used to pay such allowed claims shall be held as collateral for the Post-Petition Indebtedness.

24.     Immediately upon the entry of this Order, the Debtors shall account to the Lenders for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of the Pre-Petition Collateral in the Debtor's possession, custody or control. All cash, checks, notes, drafts, instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of the Debtors (collectively, "Cash Proceeds") currently in the possession of the Debtor or in any accounts in financial institutions, including any lock box or depository accounts, shall be deemed proceeds of the Pre-Petition Collateral. All Cash Proceeds shall be used by the Debtors in accordance with the terms of this Order.

25.     The agreement by the Lenders to make any Post-Petition Financing available to the Debtors under the Pre-Petition Agreements, Post-Petition Amendment and to allow the use of Cash Collateral pursuant to the terms of this Order shall continue until the earlier of (a) the Termination Date, and (b) the date all Pre-Petition Indebtedness and Post-Petition Indebtedness is repaid in full (the "Term"), unless terminated prior to such date pursuant to the terms of the Pre-Petition Agreements or this Order.

CHICAGO/#1966979.4

26.     The Debtors are hereby required to deliver to the Lenders such other financial and other information concerning the business and affairs of the Debtor as the Lenders shall reasonably request from time to time, including, without limitation, the financial reports and information provided to the Lenders under the Pre-Petition Agreements, as well as all material documents relating to the Sale Process or other form of restructuring (including without limitation, solicitation materials, disclosure statements, solicitation for new financing, valuations, business plans, sale materials and projections) provided to third parties at such time as such documents and information are provided to such third parties, as well as such other information reasonably requested by the Lenders.  The Debtors shall fully cooperate with and permit the Lenders to perform physical inventories of all assets in the Debtors' facilities at any reasonable times requested by the Lenders.  The Debtors shall further provide the Lenders, upon request, with (a) detailed information as to the extent and composition of the Pre-Petition Collateral and Post-Petition Collateral and any collections thereon; (b) a daily report, with information reasonably satisfactory to the Lenders, identifying and differentiating accounts receivable; (c) a weekly collections report (including reports of sales); (d) a weekly variance report of actual expenditures versus Budget expenditures; and (e) a weekly borrowing base certificate in the form currently used by the Debtors.

27.     Having been found to be extending credit and making Loans to the Debtors in good faith, the Lenders shall be entitled to the full protection of Bankruptcy Code § 364(e) with respect to the Post-Petition Financing and the liens and priorities created or authorized by this Order in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal.  Any stay, modification, reversal or vacation of this Order shall not affect the validity of any obligation of the Debtors to the Lenders incurred pursuant to this

Order. Notwithstanding any such stay, modification, reversal or vacation, all loans made pursuant to this Order, all use of cash collateral and all Post-Petition Financing incurred by the Debtor pursuant hereto or the Pre-Petition Agreements prior to written notice to the Lenders of the effective date of any such stay, modification, reversal or vacation, shall be governed in all respects by the provisions hereof and the Lenders shall be entitled to all the rights, privileges and benefits of this Order, including without limitation, the liens, Replacement Liens and Superpriority Claims granted herein.

28. Solely by providing the Post-Petition Financing or taking any actions pursuant to this Order, the Lenders shall not: (1) be deemed to be in control of the operations or liquidation of the Debtor; or (2) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation, management or liquidation of the Debtors.

29. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered including without limitation (a) converting any of the Chapter 11 Cases to Chapter 7; or (b) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as well as the Superpriority Claims, liens and Replacement Liens granted pursuant to this Order, and the Pre-Petition Agreements shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claims, liens and Replacement Liens shall maintain their priority as provided by this Order until all Pre-Petition Indebtedness and Post-Petition Indebtedness is indefeasibly paid in full and discharged.

30. The Lenders' obligations under this Order are subject to delivery to the Lenders of evidence satisfactory to the Lenders that the Collateral is insured for the full replacement value thereof and the Lenders are named as loss payee and/or as additional insured on all insurance policies upon request of the Lenders.

31.     The Agent and Lenders may retain a restructuring consultant or additional third party consultants or experts to review matters pertaining to the business and properties of the Debtors (including, without limitation, the value of the Debtors' businesses) each at the Debtors' expense (collectively, the "Lenders' Consultants").    The Debtors will permit the Lenders' Consultants to examine the respective corporate, financial and operating records, and, at the Debtors' expense and at reasonable times, make copies thereof, inspect the assets, properties, operations and affairs of the Debtors, visit any or all of the offices of the Debtors to discuss such matters with their officers, independent auditors, accountants or consultants (and the Debtors hereby authorizes such independent auditors, accountants and consultant to discuss such matters with the Lenders' Consultants), and the Debtors will cooperate with the Lenders' Consultants in all reasonable respects.

32.     In consideration for the Post-Petition Financing, each of the Debtors, on behalf of itself and its successors and assigns (collectively, the "Releasors"), but without prejudice to the rights of other parties in interest to assert claims, if any, on behalf of the Debtors' estates in accordance with ¶10 hereof, shall forever release, discharge and acquit the Agent and the Lenders and their respective officers, directors, employees, agents, attorneys and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, damages, liabilities, responsibilities, disputes, remedies, actions, causes of action, indebtedness and obligations, of every type, including, without limitation, any so-called "lender liability" claims or defenses, which arose on or prior to the date this Order is entered with respect to the Debtors, the Pre-Petition Indebtedness, the Pre-Petition Agreements, the Post-Petition Indebtedness or the Post-Petition Financing; provided, however, the foregoing release shall not release the Lenders from their obligations under this Order.

29

33. Entry of this Order shall be without prejudice to (a) any and all rights, remedies, claims and causes of action which the Lenders may have against the Debtors or any third parties, including, without limitation, any guarantor of the Debtors' obligations to the Lenders, (b) the right of the Lenders to seek further relief from the automatic stay in effect pursuant to Bankruptcy Code § 362, or any other relief in these Chapter 11 Cases. The provisions of this Order shall be binding upon and inure to the benefit of the Lenders and their successors and assigns, the Debtors and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these cases as a legal representative of the Debtors or their respective estates.

34. Except as otherwise provided herein, the terms of this Order shall be valid and binding upon the Debtors, all of their respective creditors, and all other parties in interest from and after the date of this Order. In the event this Court modifies any of the provisions of this Order or the Pre-Petition Agreements following such further hearing, such modifications shall not affect the rights and priorities of the Lenders pursuant to this Order with respect to the Pre-Petition Collateral, Post-Petition Collateral and any portion of the Post-Petition Financing which arises, or is incurred or is advanced prior to such modifications (or otherwise arising prior to such modifications), and this Order shall remain in full force and effect except as specifically amended or modified at such final hearing.

35. To the extent there exists any conflict between the Pre-Petition Agreements and the terms of this Order, this Order shall govern. To the extent there exists any conflict between the Post-Petition Amendment and the terms of this Order, the Post-Petition Amendment shall govern.

CHICAGO/#1966979.4

36. The Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Collateral.

37. The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to the Pre-Petition Agreements, as the Lenders may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably necessary by the Lenders to effectuate the terms and conditions of this Order and the Pre-Petition Agreements.

38. Any and all reports that are required to be made by the Debtors to the Agent or Lenders shall be provided to counsel for the Committee simultaneously with the Debtors' transmission to the Agent or Lenders.

39. The Bankruptcy Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: August 17 , 2009
     Wilmington, Delaware             United States Bankruptcy Judge
: