# EXHIBIT A

# POST-PETITION AMENDMENT TO LOAN AND SECURITY AGREEMENT

**THIS POST-PETITION AMENDMENT TO LOAN AND SECURITY AGREEMENT** (this "Agreement"), effective as of July 27, 2009, is made by and among Stant Holding Corp., a Delaware corporation ("Stant Holding"), Stant Corporation, a Delaware corporation ("Stant"), Standard-Thomson Corporation, a Delaware corporation ("STC"), Thomson International Corporation, a Delaware corporation ("Thomson"), Stant Manufacturing Inc., a Delaware corporation ("Stant Manufacturing"; and together with Stant Holding, Stant, STC and Thomson, each individually, a "Borrower", and collectively, jointly and severally, the "Borrowers"), Stant Parent Corp., a Delaware corporation ("Holdings"), as a Guarantor (together with the Borrowers, collectively, the "Loan Parties" and, individually, each as a "Loan Party"); GMAC Commercial Finance LLC, a Delaware limited liability company (in its individual capacity, "GMAC CF"), for itself as a Lender and as Agent (in such capacity, "Agent"); and those Lenders a party hereto.

## RECITALS:

A.     The Loan Parties, Agent and the Lenders are parties to that certain Loan and Security Agreement, dated as of June 18, 2008, as amended as of May 21, 2009, June 4, 2009 and June 29, 2009 (as amended hereby and as may be further amended, restated or otherwise modified from time to time, the "Loan Agreement"), and the other Loan Documents;

B.     Pursuant to the Loan Documents, the Lenders agreed to make certain loans and other extensions of credit available to the Borrowers, and, to secure in part such loans, extensions of credit and the other obligations under the Loan Agreement (the "Obligations"), each Loan Party has granted to Agent, for the benefit of Agent and the Lenders, a continuing security interest in, lien and mortgage in and to, and right of setoff against all of the Collateral, as defined in the Loan Agreement;

C.     The outstanding balance of the Obligations to the Lenders as of July 27, 2009, equaled approximately $62,051,487.61 (inclusive of interest, facility fees, costs, expenses, swap exposure and indemnities), plus (i) outstanding letter of credit exposure, plus (ii) other fees, costs, expenses and indemnities as provided for in the Loan Documents including without limitation other fees, costs and expenses incurred by Agent and the Lenders in connection with the Loan Documents, this Agreement, and the transactions contemplated hereby and thereby, including, without limitation, legal fees, costs and expenses required to be reimbursed pursuant to the Loan Documents;

D.     The Loan Parties have requested the Lenders to provide to Borrowers, as debtors and debtors-in-possession in the Loan Parties' Chapter 11 cases filed on July 27, 2009, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), styled *In re Stant Parent Corp., et al.*, certain debtor-in-possession financing (the "DIP Financing") substantially on the terms set forth in the Interim Order (I) Authorizing Secured Post-Petition Financing, (II) Granting Senior Liens and Superpriority Administrative Expense Status, (III) Authorizing the Debtors' Use of Cash

Collateral, (IV) Granting Limited Relief from the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief (as such Interim Order may be amended, supplemented or modified from time to time with the prior written consent of Agent, and any "final" order entered by the Bankruptcy Court which shall be in form and substance satisfactory to Agent, as such final order may be amended, supplemented or modified from time to time with the prior written consent of Agent, collectively, the "DIP Financing Order"). Lenders have agreed to this request on the condition that Loan Parties agree, for purposes of the DIP Financing only, to modify the Loan Agreement as stated herein.

NOW, THEREFORE, in consideration of the foregoing and the agreements, promises and covenants set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     **RECITALS**. The recitals to this Agreement are incorporated herein as a part of this Agreement.

2.     **DEFINITIONS**. Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Loan Agreement.

3.     **AMENDMENT TO THE LOAN AGREEMENT**. The Loan Parties, Agent and the Lenders hereby agree to amend the Loan Agreement as follows:

(a)     The definition of "Asset Disposition" in Section 1.1 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

""<u>Asset Disposition</u>" means the disposition, whether by sale, lease, transfer, loss, damage, destruction, condemnation or otherwise, of any or all of the assets of any Loan Party or any of its Subsidiaries."

(b)     The following definition of "Bankruptcy Court" is hereby added, in alphabetical order, to Section 1.1 of the Loan Agreement as follows:

""<u>Bankruptcy Court</u>" means United States Bankruptcy Court for the District of Delaware."

(c)     The following definition of "DIP Budget" is hereby added, in alphabetical order, to Section 1.1 of the Loan Agreement as follows:

""<u>DIP Budget</u>" means the operative budget under which Loan Parties are operating in accordance with the DIP Financing Order."

(d)     The following definition of "DIP Financing Order" is hereby added, in alphabetical order, to Section 1.1 of the Loan Agreement as follows:

""<u>DIP Financing Order</u>" means collectively (a) that certain Interim Order (I) Authorizing Secured Post-Petition Financing, (II) Granting

Senior Liens and Superpriority Administrative Expense Status, (III) Authorizing the Debtors' Use of Cash Collateral, (IV) Granting Limited Relief from the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief entered into in connection with Loan Parties' Chapter 11 cases filed on July 27, 2009, in the United States Bankruptcy Court for the District of Delaware, styled *In re Stant Parent Corp., et al.*, as such Interim Order may be amended, supplemented or modified from time to time with the prior written consent of Agent, and (b) any "final" order entered by the Bankruptcy Court which shall be in form and substance satisfactory to Agent, as such final order may be amended, supplemented or modified from time to time with the prior written consent of Agent."

(e)     The following definition of "DIP Financing Overadvance" is hereby added, in alphabetical order, to Section 1.1 of the Loan Agreement as follows:

""DIP Financing Overadvance" has the meaning assigned to that term in subsection 9.9."

(f)     The definition of "Material Adverse Effect" in Section 1.1 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

""Material Adverse Effect" means a material adverse effect upon (a) the business, operations, properties, assets or condition (financial or otherwise) of the Loan Parties taken as a whole, (b) the ability of any Loan Party to perform in any material respect its obligations under any Loan Document to which it is a party or of Agent or any Lender to enforce or collect any of the Obligations or (c) the enforceability or priority of the Agent's Liens with respect to a material portion of the Collateral. Notwithstanding the foregoing, it is understood and agreed that the filing of the Loan Parties' Chapter 11 cases filed on July 27, 2009, in the Bankruptcy Court styled *In re Stant Parent Corp., et al.* shall not be considered a Material Adverse Effect."

(g)     The definition of "Maximum Revolving Loan Amount" in Section 1.1 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

""Maximum Revolving Loan Amount" means, as of any date of determination, the aggregate of the Revolving Loan Commitments of all Lenders less the sum of the Letter of Credit Reserve and the Swingline Loan then outstanding."

(h)     The following definition of "Post-Petition Amendment" is hereby added, in alphabetical order, to Section 1.1 of the Loan Agreement as follows:

""<u>Post-Petition Amendment</u>" means that certain Post-Petition Amendment to Loan and Security Agreement by and among Borrowers, Holdings, Agent and the Lenders dated as of July 27, 2009."

(i)     The following definition of "Post-Petition Amendment Effective Date" is hereby added, in alphabetical order, to Section 1.1 of the Loan Agreement as follows:

""<u>Post-Petition Amendment Effective Date</u>" means July 27, 2009."

(j)     The following definition of "Pro Rata Share" is hereby added, in alphabetical order, to Section 1.1 of the Loan Agreement as follows:

""<u>Pro Rata Share</u>" means (a) with respect to matters relating to a particular Commitment of a Lender, the percentage obtained by dividing (i) such Commitment of that Lender by (ii) all such Commitments of all Lenders and (b) with respect to all other matters, the percentage obtained by dividing (i) the Total Loan Commitment of a Lender by (ii) the Total Loan Commitments of all Lenders, in either (a) or (b), as such percentage may be adjusted by assignments permitted pursuant to subsection 9.5; provided, however, if any Commitment is terminated pursuant to the terms hereof, then "Pro Rata Share" means the percentage obtained by dividing (x) the aggregate amount of such Lender's outstanding Loans related to such Commitment by (y) the aggregate amount of all outstanding Loans related to such Commitment; provided further, however, with respect to matters relating to the DIP Financing Overadvances (including, without limitation, each Lender's obligation to make DIP Financing Overadvances pursuant to Section 9.9), "Pro Rata Share" shall mean the percentage of such Lender's Commitment set forth on <u>Exhibit I</u> attached hereto and incorporated herein."

(k)     The definition of "Requisite Lenders" in Section 1.1 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

""<u>Requisite Lenders</u>" means Lenders, (other than a Defaulting Lender), holding or being responsible for more than 50% of the sum (without duplication) of the (a) outstanding Loans (other than the portion of DIP Financing Overadvances participated by GMAC CF, as Lender, to H.I.G. Capital Partners IV, L.P., pursuant to that certain Participation Agreement dated as of July 27, 2009 by and between H.I.G. Capital Partners IV, L.P. and GMAC CF, acknowledged by Agent), (b) Letter of Credit Reserve and (c) unutilized Commitments of all Lenders which are not Defaulting Lenders (other than the portion of such unutilized Commitments solely relating to DIP Financing Overadvances participated by GMAC, CF, as Lender, to H.I.G. Capital Partners IV, L.P. pursuant to the Participation Agreement referred to in the foregoing clause (a))."

CHICAGO/#1958896.14

(l)     The definition of "Revolving Loan Commitment" in Section 1.1 of the Loan Agreement is hereby deleted in its entirety and replaced with the following:

"'<u>Revolving Loan Commitment</u>" means (a) as to any Lender, the commitment of such Lender to make Revolving Advances pursuant to subsections 2.1(A) and 9.9, and to purchase participations in Lender Letters of Credit pursuant to subsection 2.1(F) and without duplication to purchase a participation in the Swingline Loan pursuant to subsection 2.1(B) in the aggregate amount set forth on <u>Exhibit H</u> attached hereto and incorporated herein or in the most recent Assignment and Acceptance Agreement, if any, executed by such Lender, and (b) as to all Lenders, the aggregate commitment of all Lenders to make Revolving Advances and to purchase participations in Lender Letters of Credit and without duplication to purchase participations in the Swingline Loan pursuant to subsection 2.1(B)."

(m)     The following definitions in Section 1.1 of the Loan Agreement are hereby deleted in their entirety: "Revolving Loan Commitment Increase"; "Revolving Loan Commitment Increase Effective Date".

(n)     Section 2.1(A) of the Loan Agreement, Revolving Loan, is hereby deleted in its entirety and replaced with the following:

"(A)     <u>Revolving Loan</u>. Each Lender, severally, agrees to lend to Borrowers from time to time its Pro Rata Share of each advance under the Revolving Loan Commitment including as set forth in subsection 9.9. The aggregate amount of the Revolving Loan Commitment shall not exceed at any time Thirty Two Million Four Hundred Eighty One Thousand Four Hundred Eighty Seven and 61/100 Dollars ($32,481,487.61). Amounts borrowed under this subsection 2.1(A) or subsection 9.9 may be repaid and reborrowed at any time prior to the earlier of (1) the termination of the Revolving Loan Commitment pursuant to subsection 8.3 or (2) the Termination Date. Except as otherwise provided herein, including without limitation in subsection 9.9, no Lender shall have any obligation to make a Revolving Advance to the extent such Revolving Advance would cause the Revolving Loan (after giving effect to any immediate application of the proceeds thereof) to exceed the aggregate amount of the Revolving Loan Commitments of all Lenders less the sum of the Letter of Credit Reserve and the Swingline Loan then outstanding."

(o)     Section 2.1(C) of the Loan Agreement, Term Loan, is hereby deleted in its entirety and replaced with the following:

"(C)     <u>Term Loan</u>. Each Lender, severally, agrees to lend to Borrowers, on the Closing Date, its Pro Rata Share of the Term Loan Commitment which is in the aggregate amount of $40,000,000. The Term Loan shall be funded in one drawing. Amounts borrowed under this

subsection 2.1(C) and repaid may not be reborrowed. The Term Loan shall become immediately due and payable without notice or demand on the Termination Date."

(p)     The following sentence is hereby added to the end of Section 2.2(B) of the Loan Agreement, Interest:

"From and after the Post-Petition Amendment Effective Date, the Term Loan shall not bear any interest. For the avoidance of doubt, all interest accrued on the Term Loan prior to the Post-Petition Amendment Effective Date continue to constitute Obligations."

(q)     Section 2.4(B)(1) of the Loan Agreement, Over Formula Advance, is hereby deleted in its entirety and replaced with the following:

"(1)     Over Formula Advance. At any time that the Revolving Loan exceeds the aggregate amount of the Revolving Loan Commitments of all Lenders less the sum of the Letter of Credit Reserve and the Swingline Loan then outstanding (an "Over Formula Advance"), Borrowers shall immediately repay the Revolving Loan and/or the Swingline Loan to the extent necessary to eliminate the Over Formula Advance."

(r)     Section 2.4(B)(2) of the Loan Agreement, Prepayments from Proceeds of Asset Dispositions, is hereby deleted in its entirety and replaced with the following:

"(2)     Prepayments from Proceeds of Asset Dispositions. Immediately upon receipt by Loan Parties or any of their Subsidiaries of Net Cash Proceeds of any Asset Disposition (in one or a series of related transactions), Borrowers shall prepay the Obligations in an amount equal to such Net Cash Proceeds. All such prepayments shall be applied to the Obligations in accordance with subsection 2.4(E)."

(s)     Section 2.4(B)(4) of the Loan Agreement, Prepayments from Issuance of Securities, is hereby deleted in its entirety and replaced with the following:

"(4)     Prepayments from Issuance of Securities and Indebtedness. Immediately upon the receipt by any Loan Party of the Net Cash Proceeds of (a) the issuance of equity securities or (b) the issuance of Indebtedness, Borrowers shall prepay the Obligations in an amount equal to such Net Cash Proceeds. All such prepayments shall be applied to the Obligations in accordance with subsection 2.4(E)."

(t)     Section 2.4(E) of the Loan Agreement, Application of Prepayment Proceeds, is hereby deleted in its entirety and replaced with the following:

"(E)     Application of Prepayment Proceeds.  With respect to the prepayments described in subsections 2.4(B)(2), 2.4(B)(3) and 2.4(B)(4)(a), such prepayments shall first be applied in payment of the DIP Financing Overadvances, and any remaining amounts shall be applied in payment of the outstanding principal balance of the Revolving Loans, and, at any time after the outstanding principal balance of the Revolving Loans shall have been repaid in full (other than indemnification Obligations not then asserted or due), such payments shall be applied in payment of the Term Loan.  With respect to the prepayments described in subsections 2.4(B)(4)(b), such prepayments shall first be applied in payment of the outstanding principal balance of the Revolving Loans (other than DIP Financing Overadvances), and, at any time after the outstanding principal balance of the Revolving Loans (other than the DIP Financing Overadvances) shall have been repaid in full (other than indemnification Obligations not then asserted or due), such payments shall be applied in payment of the Term Loan, and, at any time after the Term Loan have been repaid in full (other than indemnification Obligations not then asserted or due), such payments shall be applied to reduce the outstanding principal balance of the DIP Financing Overadvances.  Considering each type of Loan being prepaid separately, any such prepayment shall be applied first to Base Rate Loans of the type required to be prepaid before application to LIBOR Loans of the type required to be prepaid.  After the outstanding principal balance of the Revolving Loans is reduced to zero Dollars ($0) as a result of the application of this subsection 2.4(E), any remaining amount from such prepayments (i) shall be applied to all remaining Obligations then outstanding (if any) and any balance remaining shall be delivered to Borrowers and (ii) upon the occurrence and during the continuance of an Event of Default, shall be applied in accordance with subsection 8.7 of this Agreement."

(u)     The first sentence of Section 2.5 of the Loan Agreement, Term of this Agreement, is hereby deleted in its entirety and replaced with the following:

"This Agreement shall be effective until the earlier of (a) September 30, 2009, (b) the closing of the sale of all or substantially all of the Borrowers' assets pursuant to an order from the Bankruptcy Court, (c) the date that is ten (10) days after the Bankruptcy Court's order approving a sale of all or substantially all of Borrowers' assets, and (d) the occurrence of a default or event of default under the DIP Financing Order (the "Termination Date")."

(v)     Section 2.16 of the Loan Agreement, Increase in Revolving Loan Commitment, is hereby deleted in its entirety and replaced with the following:

"[Reserved.]"

(w)     Section 3(C) of the Loan Agreement, Closing Date Availability, is hereby deleted in its entirety and replaced with the following:

"[Reserved.]"

(x)     Section 3(R) of the Loan Agreement, Solvency, is hereby deleted in its entirety and replaced with the following:

"[Reserved.]"

(y)     Section 4.14 of the Loan Agreement, Solvency, is hereby deleted in its entirety and replaced with the following:

"[Reserved.]"

(z)     Section 6 of the Loan Agreement, Financial Covenants, is hereby deleted in its entirety and replaced with the following:

"[Reserved.]"

(aa)     The following sentence is added at the end of Section 7.8 of the Loan Agreement, Transactions with Affiliates:

"Notwithstanding the foregoing, the foregoing restrictions shall not apply to the Loan Parties entering into that certain Asset Purchase Agreement dated as of July 27, 2009 by and among the Loan Parties and Vapor Acquisition Corp. (to the extent it is an Affiliate)."

(bb)     Clause (H) of Section 8.1 of the Loan Agreement, Voluntary Bankruptcy, is hereby deleted in its entirety and replaced with the following:

"(H)     <u>Voluntary Bankruptcy; Appointment of Receiver, etc</u>. Except for the filing of the Loan Parties' Chapter 11 cases on July 27, 2009, in the Bankruptcy Court styled *In re Stant Parent Corp., et al.*, (1) any Loan Party commences a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or consents to the entry of an order for relief in an involuntary case or to the conversion of an involuntary case to a voluntary case under any such law or consents to the appointment of or taking possession by a receiver, trustee or other custodian for all or a substantial part of its property; or (2) any Loan Party makes any assignment for the benefit of creditors; or (3) the board of directors of any Loan Party adopts any resolution or otherwise authorizes action to approve any of the actions referred to in this subsection 8.1(H); or"

(cc)     Clause (L) of Section 8.1 of the Loan Agreement, Solvency, is hereby deleted in its entirety and replaced with the following:

CHICAGO/#1958896.14

"[Reserved.]"

(dd)    Section 8.1 of the Loan Agreement, Event of Default is hereby amended by adding the following immediately before the period appearing therein:

"; or (T) <u>DIP Financing Order</u>.   The occurrence of any default or event of default, as each such term is defined in the DIP Financing Order, under the DIP Financing Order, or the amendment, modification or termination of such DIP Financing Order without Agent's prior written consent."

(ee)    Subpart (b) of the first sentence of Section 8.7 of the Loan Agreement, Application of Proceeds, is hereby deleted in its entirety and replaced with the following:

"(b) the proceeds of any sale of, or other realization upon, all or any part of the Collateral shall be applied:  first, to all fees, costs and expenses incurred by or owing to Agent and then any Lender with respect to this Agreement, the other Loan Documents (other than any Secured Hedge Agreement) or the Collateral; second, to accrued and unpaid interest on the DIP Financing Overadvances (including any interest which but for the provisions of any bankruptcy or insolvency law would have accrued on such amounts); third, to the principal amounts of the DIP Financing Overadvances outstanding (which shall not be deemed to include Obligations owed to any Lender under an Interest Rate Agreement, Secured Hedge Agreement or Currency Swap Agreement); fourth, to accrued and unpaid interest on all other Obligations (including any interest which but for the provisions of any bankruptcy or insolvency law would have accrued on such amounts); fifth, to the principal amounts of all other Obligations outstanding (other than Obligations owed to any Lender under an Interest Rate Agreement, Secured Hedge Agreement or Currency Swap Agreement); and sixth, to any other Obligations of the Loan Parties owing to Agent or any Lender under the Loan Documents, any Interest Rate Agreement, Secured Hedge Agreement or Currency Swap Agreement."

(ff)    A new paragraph is hereby inserted in Section 9.9 of the Loan Agreement, Discretionary Advances, immediately following the first paragraph, as follows:

"Notwithstanding anything contained herein to the contrary, during the period from the entry of the DIP Financing Order to the Termination Date, each Lender, severally, agrees to make Revolving Advances to Borrowers in each of such Lender's Pro Rata Shares of each Revolving Advance in an aggregate amount of not more than Eleven Million and No/100 Dollars ($11,000,000.00) (such amount referred to as the "<u>DIP Financing Commitment Amount</u>"), provided that the Revolving Loans do

not exceed the aggregate amount of the Revolving Loan Commitment less the sum of the Letter of Credit Reserve and the Swingline Loan then outstanding (the "DIP Financing Overadvances"). Notwithstanding anything contained in this Agreement to the contrary, DIP Financing Overadvances shall be requested in the manner set forth in Section 2.1(D). DIP Financing Overadvances shall be used by Borrowers to fund only the disbursements set forth in the DIP Budget (when scheduled) or as otherwise set forth in the DIP Financing Order, without regard to the Borrowing Base; provided, that Agent and Lenders' obligations to provide the DIP Financing Overadvances is expressly predicated on Loan Parties' compliance with the terms and conditions of the DIP Financing Order; provided further, Agent and the Lenders shall have no obligation to advance the DIP Financing Overadvances upon the occurrence of a default or event of default under the DIP Financing Order; provided further, all conditions set forth in Section 3 must be satisfied prior to each Revolving Advance of the DIP Financing Overadvances, provided, that each party hereto acknowledges the occurrence and continuance of the "Current Defaults", as defined and set forth in the Post-Petition Amendment, for purposes of the satisfaction of the conditions set forth in Section 3. Notwithstanding anything contained in Section 2.2(A) to the contrary, the DIP Financing Overadvances shall bear interest from the date such Revolving Advances are made to the date paid at a rate per annum equal to, in the case of LIBOR Loans, LIBOR plus five and three quarters of one percent (5.75%), and in the case of Base Rate Loans, the Base Rate plus four and three quarters of one percent (4.75%), and the interest on the DIP Financing Overadvances shall be payable to Agent for the benefit of Lenders monthly in arrears on the first day of each month, on the date of any prepayment of Loans and at maturity, whether by acceleration or otherwise. For purposes of the DIP Financing Overadvances, (a) LIBOR shall equal the greater of two and three quarters of one percent (2.75%) and the amount determined in accordance with section (ii) of the definition of "LIBOR", and (b) in no event shall the Base Rate be less than three and three quarters of one percent (3.75%).""

(gg)    The addresses set forth for notice purposes of Borrowers in Section 10.3 of the Loan Agreement, Notices, are hereby deleted and replaced with the following:

If to Borrowers:    c/o H.I.G. CAPITAL, LLC
1001 Brickell Bay Drive, 27th Floor
Miami, FL 33131
Attention: Lewis Schoenwetter and Roman Krislav
Facsimile No.: (305) 379-2013
e-mail: rkrislav@higcapital.com ;
lschoenwetter@higcapital.com

<table>
<tr><td>With a copy to:</td><td>KIRKLAND & ELLIS LLP<br>200 E. Randolph Drive<br>Chicago, IL 60601<br>Attention: Michael Weed & Andres Mena<br>Facsimile No.: (312) 862-2200<br>e-mail: mweed@kirkland.com ,<br>amena@kirkland.com</td></tr>
<tr><td>And a copy to:</td><td>GREENBERG TRAURIG LLP<br>200 Park Avenue<br>New York, NY 10166<br>Attention: Nancy A. Mitchell<br>Facsimile No.: 212.801.6400<br>e-mail: mitchelln@gtlaw.com</td></tr>
</table>

(hh)     The parties hereto acknowledge and agree no other Loans, Lender Letters of Credit, Swingline Advances, or other Advances or overadvances under the Revolving Loan Commitment shall be available to Borrowers other than the DIP Financing Overadvances.  The parties hereto furthermore acknowledge and agree that notwithstanding anything contained in the Loan Agreement to the contrary, (A) the Interest Period for LIBOR Loans of the DIP Financing Overadvances shall be either a (1) one or (2) two month period, (B) there shall be no more than two (2) Interest Periods relating to LIBOR Loans of the DIP Financing Overadvances outstanding at any time and (C) no Interest Period shall extend beyond the Termination Date.

(ii)     Exhibit H, "Revolving Loan Commitment Amounts", attached hereto as Annex A, shall be attached to and incorporated in the Loan Agreement.

(jj)     Exhibit I, "Pro Rata Share for DIP Financing Overadvances", attached hereto as Annex B, shall be attached to and incorporated in the Loan Agreement.

4.     **EFFECTUATION**.  This Amendment shall not become effective until Agent shall have received:

(a)     from each party hereto, either a counterpart of this Amendment signed on behalf of such party or written evidence reasonably satisfactory to Agent (which may include telecopy or electronic transmission of a signed signature page of this Amendment) that such party has signed a counterpart of this Amendment;

(b)     a fully executed Participation Agreement from H.I.G. Capital Partners IV, L.P. with GMAC CF, as Lender, and acknowledged by Agent, in form and substance satisfactory to Agent and GMAC CF, as Lender, in the sole discretion of each of Agent and GMAC CF, as Lender (the "Participation Agreement"), pursuant to which H.I.G. Capital Partners IV, L.P. shall purchase a $6,000,000 participation in the DIP Financing Overadvances from GMAC CF, as Lender;

CHICAGO/#1958896.14

(c)     $6,000,000 in immediately available funds in the "Participation Account" (as such term is defined in the Participation Agreement) from H.I.G. Capital Partners IV, L.P.;

(d)     Amended and Restated Revolving Loan Notes in favor of each Lender for such Lender's Revolving Loan Commitment as amended hereby, each in form and substance satisfactory to such Lender; and

(e)     A true, correct and complete copy of the DIP Financing Order and the DIP Budget approved by the Bankruptcy Court, as certified by Borrower Representative, each of which is in form and substance satisfactory to Agent.

5.     **REPRESENTATIONS AND WARRANTIES.** Each Loan Party's representations and warranties contained in this Agreement shall survive the execution, delivery and acceptance of this Agreement by Agent and the Lenders. Each Loan Party represents and warrants to Agent and the Lenders that:

(a)     The execution and delivery of this Agreement and the performance by each Loan Party of its obligations hereunder are within each Loan Party's organizational powers and authority, have been duly authorized by all necessary organizational action and do not and will not contravene or conflict with the organizational documents or material contracts of such Loan Party. This Agreement has been duly executed and delivered by each Loan Party and constitutes the legal, valid and binding obligations of such Loan Party, enforceable against such Loan Party in accordance with its terms subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar law affecting creditors' rights generally;

(b)     Except for the approval of the Bankruptcy Court, no consent, order, qualification, validation, license, approval or authorization of, or filing, recording, registration or declaration with, or other action in respect of, any governmental body, authority, bureau or agency or other Person is required in connection with the execution, delivery or performance of, or the legality, validity, binding effect or enforceability of, this Agreement;

(c)     The execution, delivery and performance of this Agreement by each Loan Party does not and will not violate any law, governmental regulation, judgment, order or decree applicable to such Loan Party and does not and will not violate the provisions of, or constitute a default or any event of default under, or result in the creation of any security interest or lien upon any property of such Loan Party pursuant to any indenture, mortgage, instrument, contract, agreement or other undertaking to which such Loan Party is party or is subject to or by which such Loan Party or any of their real or personal property may be bound; and

(d)     No Event of Default or Defaults exist under the Loan Documents other than the Events of Default and Defaults identified on Annex C attached hereto (collectively, the "Current Defaults") as of the date of this Agreement, and each Loan Party acknowledges the existence and continuance of such Current Defaults.

6. **RATIFICATION**. The Loan Parties acknowledge and agree that, except as expressly set forth herein, all of the terms and conditions of and their obligations under the Loan Agreement and other Loan Documents are hereby ratified and confirmed and continue unchanged and in full force and effect. Each Loan Party hereby confirms and agrees that all security interests and Liens granted to Agent for its benefit and for the ratable benefit of each Lender continue in full force and effect and shall continue to secure the Obligations. Each Loan Party hereby acknowledges and reaffirms that Agent and Lenders maintain valid, properly perfected, first priority fully enforceable security interests in and liens (subject to Permitted Encumbrances) on all of the Collateral described in the Loan Documents. All references to the Loan Agreement shall mean the Loan Agreement as modified by this Agreement. Holdings hereby agrees that the Guaranty remains in full force and effect, and Holdings hereby ratifies and affirms all of its obligations under the Guaranty, as set forth in the Guaranty.

7. **NO WAIVER.** Agent's and/or the Lenders' failure at any time to require strict performance by any Loan Party of any provision or term of the Loan Documents or this Agreement shall not waive, affect or diminish any right of Agent and the Lenders thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Agent and/or the Lenders of any Event of Default shall not, except as may be expressly set forth herein, suspend, waive or affect any Event of Default, whether the same is prior or subsequent thereto and whether of the same or of a different kind or character. None of the undertakings, agreements, warranties, covenants and representations of any Loan Party contained in this Agreement or the Loan Documents, and no Event of Default shall be deemed to have been suspended or waived by Agent or the Lenders unless such suspension or waiver is (a) in writing and signed by Agent and the Requisite Lenders, and (b) delivered to the Loan Parties.

8. **SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon Agent and the Lenders and their respective successors and assigns, and shall be binding on each Loan Party and its successors and assigns.

9. **LIMITATION ON RELATIONSHIP BETWEEN PARTIES**. The relationship of the Lenders, on the one hand, and the Loan Parties, on the other hand, has been and shall continue to be, at all times, that of creditors and debtors and not as joint venturers or partners. Nothing contained in this Agreement, any instrument, document or agreement delivered in connection herewith or in the Loan Documents shall be deemed or construed to create a fiduciary relationship between or among the parties.

10. **SECTION TITLES.** The Section titles contained in this Agreement are included for the sake of convenience only, shall be without substantive meaning or content of any kind whatsoever, and are not a part of the agreement among the parties.

11. **NOTICES.** Except as otherwise provided herein, all notices, requests and demands to or upon a party hereto to be effective shall be provided in accordance with Section 10.3 of the Loan Agreement.

**12.**  **EXECUTION IN COUNTERPARTS/FACSIMILE.**  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures shall be binding on the parties.

**13.**  **INTEGRATION.**  This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior oral or written negotiations, agreements and understandings of the parties with respect to the subject matter hereof; provided, however, that except as expressly modified herein, the Loan Documents shall remain in full force and effect in accordance with their respective terms and conditions.

**14.**  **TIME OF ESSENCE.**  Time is of the essence in this Agreement and the Loan Documents.

**15.**  **FINANCING DOCUMENT.**  This Agreement shall constitute a "Loan Document" for purposes of the Loan Agreement and all other Loan Documents.

*(Signature pages follow.)*

CHICAGO/#1958896.14

IN WITNESS WHEREOF, the parties hereto have duly executed this Post-Petition Amendment to Loan and Security Agreement as of the date first above written.

**BORROWERS:**

STANT HOLDING CORP., a Delaware corporation

By: *Marlon J Bailey*
Name: Marlon J. Bailey
Title:  President & CEO

STANDARD-THOMSON CORPORATION, a Delaware corporation

By: *Marlon J Bailey*
Name: Marlon J. Bailey
Title:  President & CEO

THOMSON INTERNATIONAL CORPORATION, a Delaware corporation

By: *Marlon J Bailey*
Name: Marlon J. Bailey
Title:  President & CEO

STANT MANUFACTURING INC., a Delaware corporation

By: *Marlon J Bailey*
Name: Marlon J. Bailey
Title:  President & CEO

STANT CORPORATION, a Delaware corporation

By: *Marlon J Bailey*
Name: Marlon J. Bailey
Title:  President & CEO

**HOLDINGS:**

**STANT PARENT CORP.**, a Delaware corporation

By: _Marlon J Bailey_

Name: Marlon J. Bailey

Title:  President & CEO

AGENT AND A LENDER:

**GMAC COMMERCIAL FINANCE LLC**

By: _____
Name: Thomas Brent
Title: Director

LENDERS:

**RBS CITIZENS, NATIONAL ASSOCIATION**

By: _____
Name: _____
Title: _____

**ING CAPITAL LLC**

By: _____
Name: Lawrence P. Eyink
Title: Director

**THE HUNTINGTON NATIONAL BANK**

By: _____
Name: James A. Woodward
Title: Vice President

*(Signature Page to Post-Petition Amendment to Loan and Security Agreement)*

AGENT AND A LENDER:

GMAC COMMERCIAL FINANCE LLC

By:_____
Name: Thomas Brent
Title:  Director

LENDERS:

RBS CITIZENS, NATIONAL ASSOCIATION

By:_____
Name: Patricia C. Joyce
Title:  Portfolio Head, Senior Vice President

ING CAPITAL LLC

By:_____
Name: Lawrence P. Eyink
Title:  Director

THE HUNTINGTON NATIONAL BANK

By:_____
Name: James A. Woodward
Title:  Vice President

*(Signature Page to Post-Petition Amendment to Loan and Security Agreement)*

AGENT AND A LENDER:

GMAC COMMERCIAL FINANCE LLC

By:_____
Name: Thomas Brent
Title: Director

LENDERS:

RBS CITIZENS, NATIONAL
ASSOCIATION

By:_____
Name: _____
Title: _____

ING CAPITAL LLC

By: *Lawrence P. Eyink*
Name: Lawrence P. Eyink
Title: Director

THE HUNTINGTON NATIONAL BANK

By:_____
Name: James A. Woodward
Title: Vice President

AGENT AND A LENDER:

**GMAC COMMERCIAL FINANCE LLC**

By:_____
Name:  Thomas Brent
Title:  Director

LENDERS:

**RBS CITIZENS, NATIONAL ASSOCIATION**

By:_____
Name: _____
Title: _____

**ING CAPITAL LLC**

By:_____
Name: Lawrence P. Eyink
Title:  Director

**THE HUNTINGTON NATIONAL BANK**

By:_____
Name: James A. Woodward
Title:  Vice President

## ANNEX A

## EXHIBIT H TO LOAN AGREEMENT

Revolving Loan Commitment

**GMAC COMMERCIAL FINANCE LLC**          $15,457,674.15

**RBS CITIZENS, NATIONAL
ASSOCIATION**          $7,566,139.32

**ING CAPITAL LLC**          $5,674,604.49

**THE HUNTINGTON NATIONAL BANK**          $3,783,069.66

## ANNEX B

## EXHIBIT I TO LOAN AGREEMENT

Pro Rata Share for DIP Financing Overadvances

| | |
|---|---|
| **GMAC COMMERCIAL FINANCE LLC** | $7,785,714.29 |
| **RBS CITIZENS, NATIONAL ASSOCIATION** | $1,428,571.43 |
| **ING CAPITAL LLC** | $1,071,428.57 |
| **THE HUNTINGTON NATIONAL BANK** | $714,285.71 |

## ANNEX C

## CURRENT DEFAULTS

1.      Failure of the Loan Parties to maintain the required minimum EBITDA set forth in subsection (A) of the Financial Covenants Rider for the fiscal quarters ending January 3, 2009, April 4, 2009 and July 4, 2009.

2.      Failure of the Loan Parties to maintain the required total leverage ratio set forth in subsection (B) of the Financial Covenants Rider for the fiscal quarters ending January 3, 2009, April 4, 2009 and July 4, 2009.

3.      Failure of the Loan Parties to maintain the required senior leverage ratio set forth in subsection (C) of the Financial Covenants Rider for the fiscal quarters ending January 3, 2009, April 4, 2009 and July 4, 2009.

4.      Failure of the Loan Parties to maintain the required Fixed Charge Coverage Ratio set forth in subsection (E) of the Financial Covenants Rider for the fiscal quarter ending January 3, 2009, April 4, 2009 and July 4, 2009.

5.      Failure of the Loan Parties to deliver the annual financial statements and reports for the Fiscal Year ending January 3, 2009 in the time required in subsection 1 of the Reporting Rider, the financial statements and reports for the  fiscal quarters ending April 4, 2009 in the time required in subsections 2 of the Reporting Rider, and the financial statements and reports for the fiscal months of April and May 2009 in the time required in subsection 3 of the Reporting Rider.

6.      Failure of the Loan Parties to deliver the annual financial statements and reports for the Fiscal Year ending January 3, 2009 without qualification by the Borrowers' Accountants as required in subsection 1 of the Reporting Rider.

7.      Failure of the Loan Parties to be solvent (as represented by the Loan Parties in subsection 4.14 of the Loan Agreement) or the admittance in writing of its present or prospective inability to pay its debts as they become due, in violation of Section 8.1(L) of the Loan Agreement.

8.      Defaults or events of default under the Seller Subordinated Debt or the Subordinated Debt which are based on the same facts and circumstances giving rise to the Current Defaults, in violation of Section 8.1(B) of the Loan Agreement.

9.      Failure of the Loan Parties to pay when due interest on the Loans for the months of May and June, the unused line fee pursuant to Section 2.3(a) for the months of May and June, and the Agent's Fee as defined in that certain fee letter agreement dated as of the Closing Date among Borrowers and GMAC CF, due June 18, 2009, all in violation of Section 8.1(A) of the Loan Agreement.

10.    Failure of the Loan Parties to pay when due the Scheduled Installment of the Term Loan originally scheduled for July 4, 2009, in violation of Section 8.1(A) of the Loan Agreement.

CHICAGO/#1958896.14