## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STANT PARENT CORP., *et al.*,[1] | Case No. 09-12647 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 15 & 111** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF THE DEBTORS' ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) GRANTING RELATED RELIEF**

Upon the motion dated July 27, 2009 (Docket No. 15) (the **"Sale Motion"**) of the above-captioned debtors and debtors-in-possession (collectively, the **"Debtors"**) for the entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the **"Bankruptcy Code"**) and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) authorizing the Debtors to, *inter alia,* (i) enter into that certain asset purchase agreement by and between Vapor Acquisition Corp. (the "**Purchaser**") and the Debtors annexed hereto as <u>Exhibit</u> <u>A</u> (the **"Agreement"**), (ii) sell substantially all of their assets, free and clear of all Liens,[2] Claims, Encumbrances and Interests (defined herein), with such sale to be in accordance with the terms and conditions of the Agreement; (iii) assume

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: Stant Parent Corp. (7606), Stant Holding Corp. (2025), Stant Corporation (8429), Stant Manufacturing, Inc. (4059), Standard-Thomson Corporation (5751) and Thomson International Corporation (5448).

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, the Agreement, or the Order (A) Approving Bid Procedures Relating to the Sale of the Debtors' Assets, (B) Scheduling a Hearing to Consider the Sale, (C) Approving the Form and Manner of Notice of Sale by Auction, (D) Establishing Procedures for Noticing and Determining Cure Amounts and (E) Granting Related Relief as applicable.

and assign certain executory contracts and unexpired leases to the Purchaser and (iv) granting related relief; and this Court having entered an order dated August 17, 2009 (the **"Bid Procedures Order"** and attached as <u>Exhibit A</u> thereto, the **"Bid Procedures"**) authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Bid Procedures to consider higher or otherwise better offers for the Acquired Assets, establishing a date for the Auction, and approving, *inter alia,* (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, Sale Hearing and the Assumption and Assignment Notice; (iii) procedures relating to the assumption and assignment of certain unexpired leases and executory contracts, including notice of proposed Cure Amounts; and (iv) the Expense Reimbursement (as defined in the Agreement); and the Bankruptcy Court having established the date of the Sale Hearing; and the Bankruptcy Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334;[3] and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion and the Agreement; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

---

[3] The "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

## IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[4]

A.    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.    The Bankruptcy Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Acquired Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates, pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

E.    The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy Code, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

F.    On July 27, 2009 (the **"Petition Date"**), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[4]    All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

G.      On August 6, 2009, the Office of the U.S. Trustee (defined below) appointed the Official Committee of Unsecured Creditors in the Debtors' cases (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code.[5]

H.      As demonstrated on the record at the hearing on the Bid Procedures Order and the Sale Hearing, upon the Committee's appointment, the Debtors, the Committee and the Purchaser (i) engaged in extensive good faith negotiations in an effort to resolve the Committee's objections to the Bid Procedures and the proposed sale, and (ii) reviewed and assessed the merits of their respective positions, the costs, expenses and risks of litigation, the result of which was that the Parties reached a global settlement of all issues relating to the Debtors' cases as set forth in and embodied by the Agreement and this Order (and to be further set forth in a Plan of Reorganization to be filed pursuant to the Agreement), which improves the terms of the original Agreement and provides for materially better treatment of all creditors of the Debtors' estates.

I.      As evidenced by the affidavits of services and publication filed with the Bankruptcy Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Bankruptcy Court, and in compliance with the Bid Procedures Order. Notice of the Sale Hearing was also published in The New York Times (National Edition). The Debtors also gave due and proper notice of the assumption, sale, and assignment of each contract to be assumed and assigned under the Agreement (the "**Assumed Contracts**" and the "**Assumed Leases**") to each non-debtor party under each such Assumed Contract and Assumed Lease. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice

---

[5]      The Committee was formed on August 6, 2009, however, the Notice of Appointment of the Committee was filed with the Court on August 7, 2009. *See* Docket No. 71.

of the Sale Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts and Assumed Leases, or of the entry of this Order is necessary or shall be required.

J.    No section of any Assumed Contract or Assumed Lease which purports to prohibit, restrict, or condition the use, tradename or assignment of any such Assumed Contracts or Assumed Leases in connection with the proposed sale to the Purchaser shall have any force or effect.

K.    A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) the Office of the United States Trustee for the District of Delaware (the **"U.S. Trustee"**); (ii) the 20 largest unsecured creditors of the Debtors; (iii) all taxing authorities having jurisdiction over any of the Acquired Assets subject to the sale, including the Internal Revenue Service; (iv) the Environmental Protection Agency; (v) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (vi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vii) all persons or entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (viii) all Contract Parties; (ix) counsel to the Purchaser; (x) counsel to the Committee; and (xi) all potential bidders previously identified or otherwise known to the Debtors (collectively, the **"Notice Parties"**).

L.    On September 4, 2009, Northstar Mezzanine Partners V, L.P. ("**Northstar**") filed its Motion for Appointment of a Chapter 11 Trustee or Examiner with Expanded Powers [Docket No. 161] (the "**Northstar Motion**"). Concurrently with entry of this Order, Northstar is withdrawing the Northstar Motion with prejudice subject only to Northstar's right to bring the

Northstar Motion again in the event that the Closing does not occur or at the Closing Northstar does not receive the Northstar Consideration (as defined herein).

M.       Other parties interested in bidding on the Acquired Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Acquired Assets.

N.       The conditions of section 363(m) of the Bankruptcy Code have been satisfied.

O.       The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Acquired Assets and assume and assign the Assumed Contracts and Assumed Leases under section 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the sale is not consummated quickly; (ii) the Agreement constitutes the highest or best offer for the Acquired Assets; (iii) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' business; and (iv) unless the sale is concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement, creditors' recoveries may be diminished.

P.       The Bid Procedures set forth in the Bid Procedures Order were non-collusive, proposed in good faith, and are substantively and procedurally fair to all parties-in-interest.

Q.       The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the

record at the Sale Hearing, through marketing efforts and a competitive sale process was conducted in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential purchases a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired Assets, and (iii) considered any bids submitted on or before the Bid Deadline.

R.      The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

S.      The Purchaser is the Successful Bidder for the Acquired Assets in accordance with the Bid Procedures Order. The Bid Procedures obtained the highest value for the Acquired Assets for the Debtors and their estates.

T.      The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Acquired Assets. The Agreement was negotiated and entered into in good faith and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of

the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Acquired Assets, the Assumed Contracts and Assumed Leases to the Purchaser. The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

U. The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

V. The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Acquired Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Acquired Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any person, the transfer of the Acquired Assets to the Purchaser and the assumption and assignment of the Assumed Contracts and Assumed Leases is a legal, valid and effective transfer of the Acquired Assets and any Assumed Contracts and Assumed Leases.

W. The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

X. Except as otherwise provided in the Agreement or this Order, the Acquired Assets shall be sold free and clear of all mortgages, restrictions, hypothecations, charges, indentures,

loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or Affiliates (as such term is defined by section 101(2) of the Bankruptcy Code), claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, **"Liens, Claims, Encumbrances and Interests"**) and the Purchaser would not enter into the Agreement to purchase the Acquired Assets otherwise.

Y.     The transfer of the Acquired Assets to the Purchaser is a legal, valid and effective transfer of the Acquired Assets, and, except as may otherwise be provided in the Agreement or

this Order, shall vest the Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Acquired Assets being sold by the Debtors.

Z.      The transfer of the Acquired Assets to the Purchaser free and clear of all Liens, Claims, Encumbrances and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests. Except as provided for in the Agreement or this Order, all persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances and Interests against the Purchaser, any of their assets, property, successors or assigns, or the Acquired Assets.

AA.     The Debtors may sell the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever as set forth in the Agreement (and except as otherwise provided in this Order) because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those (i) holders of Liens, Claims, Encumbrances and Interests and (ii) non-debtor parties to the Assumed Contracts or Assumed Leases, who did not object, or who withdrew their objections, to the sale of the Acquired Assets and the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All objections to the Sale Motion have been resolved or overruled. Those holders of Liens, Claims, Encumbrances and Interests who did object fall within one or

more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected.

BB.    Not selling the Acquired Assets free and clear of all Liens, Claims, Interests and Encumbrances would adversely impact the Debtors' estates, and the sale of Acquired Assets other than one free and clear of all Liens, Claims, Interests and Encumbrances would be of substantially less value to the Debtors' estates.

CC.    The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A) and (B) and 365(f) of the Bankruptcy Code, in connection with the sale and the assumption and assignment of the Assumed Contracts and Assumed Leases. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts and Assumed Leases pursuant to section 365(b)(1)(C) of the Bankruptcy Code. The Assumed Contracts and Assumed Leases are assignable notwithstanding any provisions contained therein to the contrary. The Debtors have provided for the cures and/or other payments or actions required to assume and assign the Assumed Contracts and Assumed Leases to the Purchaser. The assumption and assignment of the Assumed Contracts and Assumed Leases pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

DD.    The Purchaser is acting in good faith, pursuant to section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

EE.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates. Other than the Assumed Liabilities and as set forth in the Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities and the Debtors will release and forever discharge the Purchaser and any of their Affiliates, their successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Agreement.

FF.     The sale of the Acquired Assets outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization for the Debtors. The sale does not constitute a *sub rosa* chapter 11 plan.

GG.     The total consideration provided by the Purchaser for the Acquired Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Acquired Assets.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein. The Sale Motion complies with all aspects of Local Rule 6004-1.

2.     To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.     Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

### *Approval of Sale*

4.     The sale of the Acquired Assets, the terms and conditions of the Agreement and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.     The sale of the Acquired Assets and the consideration provided by the Purchaser under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.     The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Assumed Contracts and Assumed Leases as part of the sale of the Acquired Assets pursuant to section 365 of the Bankruptcy Code and this Order.

7.     Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Agreement or obligation or right granted

pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

8.    The Northstar Motion is withdrawn with prejudice subject only to the right of Northstar to bring the Northstar Motion again in the event that the Closing does not occur or at the Closing Northstar does not receive the Northstar Consideration.

9.    The Debtors are hereby authorized to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Acquired Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Acquired Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Bankruptcy Court. The Purchaser shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to their obligations to do so have been met, satisfied or waived; provided, however, that the condition specified in section 3.3(c) of the Agreement is non-waivable.

10.    The Debtors, the Committee, the Purchaser, and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the

Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Bankruptcy Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

11.     The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the

foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements and this Order, and the transactions contemplated thereby and hereby.

12.    Effective as of the Closing Date, (a) the sale of the Acquired Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets notwithstanding any requirement for approval or consent by any person and vests the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Claims, Liens, Interests and Encumbrances of any kind, except as otherwise provided in the Agreement or this Order, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of any Assumed Liabilities by the Purchaser constitutes a legal, valid and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtors of all liability with respect to any Assumed Liabilities.

***Transfer of Assets***

13.    Except to the extent specifically provided in the Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Acquired Assets to the Purchaser. Except as provided for in the Agreement or this Order, the sale of the Acquired Assets vests the Purchaser with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Claims, Liens, Interests and Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or

subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Claims, Liens, Interests and Encumbrances to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Acquired Assets, subject to all claims and defenses the Debtors may possess with respect thereto. The Sale Motion shall be deemed to provide sufficient notice of the sale of Acquired Assets free and clear of Claims, Liens, Interests and Encumbrances in accordance with Local Rule 6004-1. Except as provided for in the Agreement or this Order, following the Closing Date, no holder of any Claims, Liens, Interests and Encumbrances in the Acquired Assets may interfere with the Purchaser's use and enjoyment of the Acquired Assets based on or related to such Claims, Liens, Interests and Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person may take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

14.     The provisions of this Order authorizing the sale of the Acquired Assets free and clear of Liens, Claims, Encumbrances and Interests and the Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

15.     On or before the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances and Interests of any kind against the Acquired Assets, as such Liens, Claims, Encumbrances and Interests may have been recorded or may otherwise exist, except as otherwise provided in the Agreement or this Order. If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims,

Encumbrances and Interests in or against the Acquired Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances and Interests that the person or entity has with respect to the Acquired Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Acquired Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

16. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

17. All of the Debtors' interests in the Acquired Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Acquired Assets to the Purchaser.

18. Except as otherwise provided in the Agreement or this Order, on the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions

as may be necessary to release their respective interests or claims against the Acquired Assets, if any, as may have been recorded or may otherwise exist.

19.     Except as otherwise expressly provided in the Agreement, all persons or entities, presently or on or after the Closing Date, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

### Assumed Contracts and Assumed Leases

20.     Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtors of the Assumed Contracts and Assumed Leases and the assignment of such agreements to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.

21.     The Assumed Contracts and Assumed Leases shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of all cures and/or other payments or actions required to assume and assign the Assumed Contracts and Assumed Leases to the Purchaser pursuant to the Agreement.

22.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract and Assumed Lease. The Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

23.     Notwithstanding any other provisions in the Agreement or this Order, any and all rights, claims, damages, defenses and other interests of Tomkins Corporation under or in relation to the Stock Purchase Agreement entered into between Tomkins Corporation and Stant Holding Corporation dated June 18, 2008 (the "**SPA**"), including, without limitation, any rights of

recoupment and setoff, and any damages resulting from the non-assumption, rejection, non-performance or termination of the SPA (all of such rights, claims, damages, defenses and other interests are collectively hereinafter referred to as the "**Contract Interests**"), shall be and hereby are fully preserved in favor of and retained by Tomkins Corporation, its affiliates, successors or assigns (collectively "**Tomkins**") from and after the Closing Date, and to the extent Tomkins has such Contract Interests, may be asserted or raised by Tomkins as against the Purchaser (or any successors or assigns) as a reduction of or defense to any claim or proceeding that might be asserted or brought by the Purchaser (or any successors or assigns) against Tomkins, all the same as if the Purchaser (or any successors or assigns) were already substituted for and in the position of all of the Debtors immediately prior to the Closing Date and the transaction which is the subject of the Agreement and this Order had not occurred; provided however, that in no event shall Tomkins be entitled to affirmatively recover on any judgment or claim against the Purchaser (or any successors or assigns). The Bankruptcy Court shall retain jurisdiction to address and determine, upon request by a party in interest, the Contract Interests and any controversy associated therewith.

24. Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, the Purchaser shall promptly pay or cause to be paid from the proceeds of the sale to the parties to any Assumed Contracts and Assumed Leases the requisite Cure Amounts, if any, set forth in the Assumption and Assignment Notice served by the Debtors on each of the parties to the Assumed Contracts and Assumed Leases, with respect to the assumption and assignment thereof. The Cure Amounts are hereby fixed at the amounts set forth in the Assumption and Assignment Notice served by the Debtors, or the amounts determined on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Assumed

Contracts and Assumed Leases are forever bound by such Cure Amounts and are hereby enjoined from taking any action against the Purchaser or the Acquired Assets with respect to any claim for cure under any Assumed Contract or Assumed Lease. Notwithstanding any other provisions in the Agreement or this Order which are or may be to the contrary, any Cure Amounts due to the Tomkins Entities (as defined in the "Response and Objection of Tomkins Corporation to Notice of Debtors' Intent to Assume and Assign Certain Leases and Executory Contracts and Fixing Cure Amounts" [Docket No. 169]) (the **"Tomkins Cure Amounts"**) shall be determined as follows:

a. On or before September 18, 2009, the Debtors shall provide a list of the Tomkins Entities contracts that are to be assumed and assigned to Purchaser and proposed Tomkins Cure Amounts that are associated with each of such contracts;

b. On or before September 23, 2009, the Tomkins Entities shall notify the Debtors of any objection to any Tomkins Cure Amounts;

c. To the extent the parties agree to any Tomkins Cure Amount with respect to any Assumed Contract, such Tomkins Cure Amount shall be paid in accordance with this paragraph 24 of this Order; and

d. To the extent the parties cannot agree to any proposed Tomkins Cure Amount with respect to any Assumed Contract, the Court shall hold a hearing to determine such disputed Tomkins Cure Amounts, if any, on September 30, 2009 at 1:00 p.m. (Prevailing Eastern Time).

25. All defaults or other obligations (except amounts owing that are not in default) under the Assumed Contracts and Assumed Leases arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by payment of the Cure Amounts and the non-debtor parties to such contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any additional amounts are due or other defaults exist.

26.    Any provision in any Assumed Contract or Assumed Lease that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Contracts and Assumed Leases shall remain in full force and effect, subject only to payment of the appropriate Cure Amount, if any. No sections or provisions of any Assumed Contract or Assumed Lease that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Contracts and Assumed Leases shall have any force and effect with respect to the transactions contemplated by the Agreement and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Assumed Contract or Assumed Lease pursuant to the terms of the Agreement in any respect constitutes a default under any Assumed Contract or Assumed Lease. The non-debtor party to each Assumed Contract and Assumed Lease shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the rights and benefits under each such Assumed Contract and Assumed Lease as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

27.    The Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts and Assumed Leases.

28.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Contracts and Assumed Leases occurring from and after Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

29.     The non-debtor parties shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to the Purchaser as a result of the assumption and assignment of the Assumed Contracts and Assumed Leases.

## *Additional Provisions*

30.     On the Closing Date, as provided for in the Agreement, the Purchaser shall assume Administrative Claims of the Debtors, including, without limitation all claims of Critical Vendors to the extent set forth in the Critical Vendor Order, related to ordinary course operating expenses to be paid in the ordinary course after the Closing Date to the extent consistent with the ordinary course operating history of the Debtors and pursuant to a budget agreed to by the Purchaser and consented to by the Committee; provided, however, that claims of Critical Vendors paid pursuant to any agreement between the Debtors and any Critical Vendor in accordance with the Critical Vendor Order prior to the Closing Date and all allowed claims arising under Section 503(b)(9) of the Bankruptcy Code shall be paid on the date which is the later of (i) on or prior to the sixtieth (60th) day following the Closing Date, (ii) in the ordinary course between the Debtors and the Critical Vendor and (iii) as agreed upon by the Debtors and the Critical Vendor.

31.     On or prior to the Closing Date, the Purchaser shall deliver to the Committee, through its counsel, a $100,000 payment in cash to be held in trust by the Committee (the "**Committee Cash Payment**"). As set forth in the Agreement, the Committee Cash Payment shall be distributed to holders of allowed general unsecured claims in the Debtors' cases pursuant to, and in accordance with, the terms of the Plan of Reorganization; provided, however, that if

the Plan of Reorganization is not confirmed by the Court for any reason, the Committee Cash Payment shall be distributed to holders of allowed general unsecured claims pursuant to a further order of the Court.

32.     On the Closing Date, the Purchaser shall be authorized and directed to deliver to Northstar (collectively, the **"Northstar Consideration"**), (a) $100,000 and (b) warrants for 1.75% of the fully-diluted common equity of the Purchaser (subject to dilution on account of the management options), which warrants shall be on the same terms as the warrants being provided to the Senior Prepetition Agent (for the benefit of the Senior Prepetition Lenders). The Northstar Consideration shall be in full, final and complete satisfaction, settlement, release, and discharge of all claims, demands, rights and causes of action Northstar or its Affiliates may have against the Debtors, their estates, the Purchaser and/or their respective Affiliates, representatives, agents, counsel, advisors, members, successors and assigns. For the avoidance of doubt, the Northstar Consideration shall not include, and Northstar shall not share in or have any claim to, the Committee Cash Payment, amounts funded under the Wind-Down Budget or the amounts funded under the Carve-Out. Notwithstanding anything to the contrary in the Intercreditor Agreement, the Senior Prepetition Agent, for itself and on behalf of the Senior Prepetition Lenders, agrees and affirmatively consents to the indefeasible delivery and payment of the Northstar Consideration to Northstar.

33.     Except as expressly set forth in the Agreement, upon the Effective Date, Purchaser, and its Affiliates, representatives, agents, counsel, advisors, successors and assigns shall be unconditionally and irrevocably released by the Debtors, their estates, the Committee, and/or their respective Affiliates, representatives, agents, successors and assigns from and against from any and all direct, indirect or derivative claims, obligations, suits, judgments, liens,

interests, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence arising from or relating in any way, directly or indirectly, to the Debtors, their property, assets, operations or liabilities, and the Debtors' cases.

34. Except as expressly set forth in the Agreement, on the Effective Date, the Debtors, their estates, Northstar and the Committee, and their respective Affiliates, representatives, agents, counsel, advisors, members, successors and assigns shall be unconditionally and irrevocably released by the Purchaser and/or its respective Affiliates, representatives, agents, counsel, advisors, successors and assigns from and against from any and all direct, indirect or derivative claims, obligations, suits, judgments, liens, interests, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence arising from or relating in any way, directly or indirectly, to the Debtors, their property, assets, operations or liabilities, and the Bankruptcy Cases.

35. Upon the Effective Date, the Debtors, their estates, the Committee, the Senior Prepetition Lenders, the Senior Prepetition Agent and the Purchaser and/or their respective Affiliates, representatives, agents, counsel, advisors, members, successors and assigns shall be

unconditionally and irrevocably released by Northstar (except to the extent of the Northstar Consideration) and/or its respective Affiliates, representatives, agents, counsel, advisors, members, successors and assigns from and against from any and all direct, indirect or derivative claims, obligations, suits, judgments, liens, interests, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence arising from or relating in any way, directly or indirectly, to the Debtors, their property, assets, operations or liabilities, and the Bankruptcy Cases.

36.     Upon the Effective Date, Northstar and/or their respective Affiliates, representatives, agents, counsel, advisors, members, successors and assigns shall be unconditionally and irrevocably released by each of the Debtors, their estates, the Committee, the Senior Prepetition Lenders, and the Senior Prepetition Agent and/or their respective Affiliates, representatives, agents, counsel, advisors, members, successors and assigns from and against from any and all direct, indirect or derivative claims, obligations, suits, judgments, liens, interests, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other

occurrence arising from or relating in any way, directly or indirectly, to the Debtors, their property, assets, operations or liabilities, and the Bankruptcy Cases.

37. Upon the Effective Date, all Avoidance Actions shall be unconditionally and irrevocably released by the Purchaser and its Affiliates, representatives, agents, counsel, advisors, successors and assigns from and against from any and all direct, indirect or derivative claims, obligations, suits, judgments, liens, interests, damages, rights, causes of action, liabilities, claims or rights of contribution and indemnification, and all other controversies of every type, kind, nature, description or character whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place from the Petition Date to the Effective Date arising from or relating in any way, directly or indirectly, to the Purchaser, their property, assets, operations or liabilities, and the Bankruptcy Cases.

38. Pursuant to the terms of the Agreement, the Seller and Committee agree that they shall use commercially reasonable efforts to jointly file a liquidating plan of reorganization and accompanying disclosure statement (collectively, the "**Plan of Reorganization**") on or before the ninetieth (90th) day following the Closing Date. The Buyer agrees to provide commercially reasonable cooperation to the Seller and Committee, and their respective professionals, to assist in their efforts to (i) prepare the Plan of Reorganization and (ii) obtain confirmation of the Plan of Reorganization. The Plan of Reorganization shall, among other provisions, provide for (i) the creation of a liquidating trust which shall be the assignee of the Committee Cash Payment on the effective date thereof and which shall make all distributions to holders of allowed general unsecured claims in the Bankruptcy Cases pursuant to, and in accordance with, the terms of the

Plan of Reorganization, and (ii) contain a standard form exculpation clause which shall run in favor of each Seller, the Committee and its members (in their capacities as such), and their respective predecessors, Affiliates, subsidiaries, officers, directors, partners, agents, counsel and advisors. The Seller and Committee agree to use commercially reasonable efforts to obtain a Final Order confirming the Plan of Reorganization on or before the one-hundred twentieth (120th) day following the date the Plan of Reorganization is filed with the Bankruptcy Court; provided, however, that if the Plan of Reorganization is not confirmed by the Bankruptcy Court for any reason, distributions to general unsecured creditors of the Seller contemplated under this Order, including, without limitation the Committee Cash Payment, shall be made to holders of allowed general unsecured claims in the Bankruptcy Cases pursuant to a further order of the Bankruptcy Court.

39. Expenses incurred by the Debtors and Committee following the Closing Date and in aid of seeking confirmation of the Plan of Reorganization shall be funded through a wind-down fund of no more than $250,000.00 pursuant to the wind-down budget to be agreed upon by the Purchaser, Senior Prepetition Agent, as agent and a DIP Lender, the Debtors and the Committee (the "**Wind-Down Budget**") prior to Closing. The Wind-Down Budget and all expenditures thereunder are approved, subject only to further Bankruptcy Court approval of fees and expenses of the professionals retained in the Debtors' cases. The Wind-Down Budget may be amended, without further order of the Court, upon the written consent (which may be provided via electronic mail) of the Purchaser, Senior Prepetition Agent, as agent and a DIP Lender, the Debtors and the Committee. As of the Closing Date, the Purchaser shall assume all obligations for the timely payment of (i) the expenditures set forth in the Wind-Down Budget and (ii) all unpaid fees and expenses set forth in the Carve-Out (as such term is defined in the

Final DIP Order). Notwithstanding anything contained in this paragraph to the contrary, in no event shall the Purchaser be responsible to provide any additional funding for any amended Wind-Down Budget in excess of $250,000 plus the all unpaid fees and expenses set forth in the Carve-Out.

40.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

41.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 cases or the consummation of the transaction contemplated by the Agreement.

42.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities and as otherwise set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets. Consequently, except as otherwise provided in the Agreement or this Order, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Claims, Liens, Interests or Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Claims, Liens, Interests or Encumbrances or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Agreement. All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Claims,

Liens, Interests or Encumbrances or cause of action against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets.

43.    The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Agreement, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Except to the extent the Purchaser assume the Assumed Liabilities pursuant to the Agreement, neither the purchase of the Acquired Assets by the Purchaser or its Affiliates, nor the fact that the Purchaser or their Affiliates are using any of the Acquired Assets previously operated by the Debtors, will cause the Purchaser or any of its Affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of, or in connection with, (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, collective bargaining agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (v) the cessation of

the Debtor's operations, dismissal of employees, or termination of employment or labor agreements, collective bargaining agreements, or pension, health, welfare, compensation or other employee or retiree benefit plans, agreements, practices and programs, and any obligations that might otherwise arise from any such cessation, dismissal or termination pursuant to any law of the United States, any State therein, or any other jurisdiction in the world, whether such obligations arise under any contract, agreement, statute, regulation, ordinance, common law, public policy, constitution or any other source, including without limitation, the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq., (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Acquired Assets prior to Closing, and (ix) any litigation.

44.     Except to the extent expressly included in the Assumed Liabilities or otherwise provided in this Order, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and

regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance and Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Acquired Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance and Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any Affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, Affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Acquired Assets. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Purchaser and/or its successors and assigns in accordance with the terms of the Agreement.

45.     Other than the Assumed Liabilities or as otherwise provided for in the Agreement, the Purchaser shall have no obligations with respect to any liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and the Debtors are deemed to release and forever discharge the Purchaser and any of its Affiliates, successors and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs  and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the sale, except for liabilities and obligations under the Agreement.

46.     Notwithstanding paragraph 25 of the Final Order (I) Authorizing Continued Secured Postpetition Financing, (II) Granting Senior Liens And Superpriority Administrative Expense Status, (III) Authorizing Debtors' Use of Cash Collateral; (IV) Granting Limited Relief From The Automatic Stay; And (V) Granting Related Relief (Docket No. 110), the Senior Prepetition Agent and the Senior Prepetition Lenders' obligations to provide loans or other financial accommodations to the Debtors or to or on behalf of any other party in interest in these chapter 11 cases shall terminate on the earlier of (i) the Termination Date (as defined therein), (ii) the Closing Date, or (iii) October 3, 2009 at 11:59 p.m., unless such date is extended by agreement of the Debtors and the Senior Prepetition Agent. The failure of the Debtors to close the Sale on or before October 3, 2009 shall not be deemed to be an Event of Default under such Order.

47.     Nothing in this Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Agreement authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

48.     Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

49.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

50.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

51.     This Order and Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.

52.     The provisions of this Order are non-severable and mutually dependent.

53.     Nothing in any order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

54.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the Sale Motion shall be deemed to provide sufficient notice of the Debtors' request for relief from stay. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

55.     This Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order and the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed Contracts and Assumed Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims, Interests and Encumbrances.

Dated: Wilmington, Delaware
       September 16, 2009

_____
UNITED STATES BANKRUPTCY JUDGE